# IMPORTANT SCANNING INSTRUCTIONS

SCAN AND DOCKET ONLY THE ENCLOSED COURT FILING MATERIALS.

DO NOT SCAN OR DOCKET ANY WAYBILLS, SHIPPING LABELS, TRACKING LABELS, EXTERNAL MAILING ENVELOPES, SHIPPING POUCHES, OR OTHER PACKAGING MATERIALS ASSOCIATED WITH THIS SUBMISSION.

--------------------------------------------------------------------------------

Clerk of Court
United States Court of Appeals
for the Second Circuit
40 Foley Square
New York, NY 10007

**Re: In re: DX, Petitioner**
**Docket No. 26-563**

Dear Clerk of Court:

Petitioner DX, proceeding pro se, respectfully submits the enclosed materials for filing in the above-captioned matter.

Enclosed please find the following documents for filing:

• Certificate of Service; and

• Notice Regarding Unresolved Appellate Review and Cross-Proceeding Record Continuity.

This notice is submitted solely for informational and record-preservation purposes.

The filing does not seek substantive relief, reversal of any state-court ruling, review of any bankruptcy-court determination, adjudication of any factual dispute, reconsideration of any judgment, or intervention in any pending proceeding.

Rather, the notice identifies a procedural sequence reflected in the publicly available record involving:

(1) state-court rulings and entry of judgment in New York state-court proceedings;

(2) initiation and full briefing of appellate review before the Appellate Division, First Department;

(3) interruption of that appellate review following commencement of Chapter 11 proceedings and application of the automatic stay; and

(4) subsequent appearance and incorporation of the resulting judgment within later bankruptcy proceedings, trustee-administered proceedings, adversary proceedings, criminal proceedings, detention-related litigation, appellate detention review, sentencing proceedings, and related procedural records.

Petitioner respectfully submits that the filing is intended solely to preserve and clarify procedural relationships reflected in the presently available record, including issues relating to continuity, traceability, reviewability, and cross-proceeding record formation.

No emergency relief is requested at this time.

Please contact the undersigned if additional information is required.

Respectfully submitted,

DX          *Dx*

Petitioner, Pro Se

Dated: June 15, 2026

--------------------------------------------------------------------

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

In re: DX, Petitioner

No. 26-563

(Arising from United States v. Ho Wan Kwok, No. 1:23-cr-00118 (AT)

(S.D.N.Y.))

--------------------------------------------------------------------

## CERTIFICATE OF SERVICE

--------------------------------------------------------------------

I, DX, hereby certify under penalty of perjury that on June _15_, 2026, I served a true and correct copy of the following documents by registered mail, postage prepaid, with tracking:

(1) Notice Regarding Unresolved Appellate Review and Cross-Proceeding Record Continuity; and

(2) Certificate of Service.

The foregoing documents were served upon:

**Nathan Rehn**
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
26 Federal Plaza, 37th Floor
New York, NY 10278

Executed on June _15_, 2026

_____DX_____

DX

Petitioner, Pro Se

PUBLIC VERSION

--------------------------------------------------------------------------------

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

In re: DX, Petitioner

No. 26-563

(Arising from United States v. Ho Wan Kwok, No. 1:23-cr-00118 (AT)
(S.D.N.Y.))

--------------------------------------------------------------------------------

# NOTICE REGARDING UNRESOLVED APPELLATE REVIEW AND CROSS-PROCEEDING RECORD CONTINUITY

Submitted Solely for Informational and Record-Preservation Purposes

--------------------------------------------------------------------------------

I. Prior State-Court Proceedings ...................................................................2

II. Appellate Review Initiated Before The First Department ................................5

III. Interruption Of Appellate Review ...............................................................7

IV. Subsequent Appearance of the Judgment Across Successive Proceedings ....10

    A. Appearance of the Judgment in the Chapter 11 Proceedings.......................10

    B. Appearance of the Judgment in Trustee-Administered Adversary
    Proceedings..............................................................................................12

    C. Appearance of the Judgment in Subsequent Criminal Proceedings.............12

        C.1. Detention-Related Submissions...................................................12

        C.2. Detention Rulings and Appellate Review ......................................13

        C.3. Renewed Detention Litigation ....................................................13

        C.4. Sentencing Proceedings............................................................14

    D. Continued Reliance on the Judgment Following Interruption of Appellate
    Review .....................................................................................................15

V. Continuity And Reviewability Concerns.........................................................16

VI. Cross-Proceeding Record Formation ...........................................................18

VII. Limited Purpose Of This Notice .................................................................21

VIII. Conclusion ............................................................................................22

**PUBLIC VERSION**

---------------------------------------------------------------------------------

Petitioner respectfully submits this notice solely for informational and record-preservation purposes.

Petitioner does not seek review of any state-court ruling, does not request adjudication of any factual dispute, and does not seek any substantive relief.

This notice identifies an appellate-review sequence that appears to remain unresolved in the presently reviewed record and that subsequently became embedded within multiple later proceedings, including Chapter 11 proceedings, trustee-administered proceedings, adversary proceedings, criminal proceedings, and related appellate proceedings.

The issue identified concerns continuity, traceability, reviewability, and cross-proceeding record formation rather than the ultimate merits of any underlying dispute.

---------------------------------------------------------------------------------

# I. Prior State-Court Proceedings

The record reflects that litigation initiated by Pacific Alliance Asia Opportunity Fund L.P. ("PAX") in the **Supreme Court of the State of New York, New York County, Index No. 652077/2017**, concerned alleged obligations arising from the March 16, 2011 Loan Facility Letter **(Index No. 652077/2017, NYSCEF No. 16, N.Y. Sup. Ct.)** and the contemporaneously executed March 16, 2011 Personal Guarantee ("2011 Personal Guarantee") **(Index No. 652077/2017, NYSCEF No. 17, N.Y. Sup. Ct.)**, which the state court subsequently identified as operative contractual instruments governing the parties' relationship.

In a Decision and Order dated September 15, 2020 **(Index No. 652077/2017, NYSCEF No. 549, N.Y. Sup. Ct.)**, the Supreme Court

**PUBLIC VERSION**

granted Pacific Alliance's motion for partial summary judgment on its breach-of-contract claim. The court held that the March 16, 2011 Personal Guarantee constituted the operative agreement, concluded that defendant Kwok was judicially estopped from challenging the authenticity of certain transaction documents that he had previously sponsored during the litigation, and granted summary judgment holding defendant liable for breach of contract under the 2011 Personal Guarantee. **See NYSCEF No. 549 at 2-5, 7-8.**

The September 15, 2020 Decision further held that the parties' 2013 Deed of Settlement had terminated in its entirety following the failure to satisfy specified conditions precedent and that, as a consequence, the 2011 Personal Guarantee had reverted to full force and effect. The court therefore held defendant liable for breach of contract while reserving the issue of damages for subsequent proceedings. **See NYSCEF No. 549 at 5-8.**

Thereafter, in a Decision and Order dated December 18, 2020 (**Index No. 652077/2017, NYSCEF No. 685, N.Y. Sup. Ct.**), the court determined damages arising from the previously adjudicated liability finding. The court awarded Pacific Alliance $46,426,489.00 in unpaid principal together with contractual interest pursuant to the 2011 Personal Guarantee and rejected defendant's mitigation arguments, concluding that such theories did not preclude recovery under the 2011 Personal Guarantee. **See NYSCEF No. 685 at 1, 3-5.**

Subsequently, on February 3, 2021, judgment was entered in favor of Pacific Alliance Asia Opportunity Fund L.P. and against Mr. Kwok. The judgment expressly incorporated the liability determination previously entered in the September 15, 2020 Decision and Order (**NYSCEF No.**

PUBLIC VERSION

549) and the damages determination entered in the December 18, 2020 Decision and Order (**NYSCEF No. 685**).

Specifically, the judgment recited that:

(1) the Supreme Court had granted Pacific Alliance's motion for partial summary judgment on its breach-of-contract claim under the 2011 Personal Guarantee;

(2) the Court had subsequently directed entry of damages in the amount of $46,426,489.00 together with contractual interest pursuant to the 2011 Personal Guarantee; and

(3) judgment was therefore entered in favor of Pacific Alliance and against Mr. Kwok in the total amount of $116,402,019.57. **See Index No. 652077/2017, NYSCEF No. 716 at 1-2, N.Y. Sup. Ct.**

The judgment specifically incorporated:

(a) $46,426,489.00 in principal damages;

(b) $69,448,939.71 in contractual interest; and

(c) $526,590.86 in post-judgment interest,

for a total judgment amount of $116,402,019.57. **NYSCEF No. 716 at 2.**

Accordingly, the state-court proceedings resulted in a sequence of adjudicative rulings consisting of:

(1) **judicial-estoppel rulings precluding challenges to the authenticity of certain transaction documents previously sponsored during the litigation,** including the 2011 Loan Facility, the 2011 Personal Guarantee, the 2013 Deed of Settlement, and related supplemental settlement agreements, for purposes of the state-court proceedings. **See NYSCEF No. 549 at 2-5.**

**PUBLIC VERSION**

(2) **summary-judgment rulings** establishing liability under the 2011 Personal Guarantee after the court concluded that the 2013 Deed of Settlement had terminated and that the 2011 Personal Guarantee had reverted to full force and effect. **See NYSCEF No. 549 at 5-8**.

(3) damages determinations awarding $46,426,489.00 in principal damages together with contractual interest under the 2011 Personal Guarantee. **See NYSCEF No. 685 at 1, 5**; and

(4) entry of a final judgment totaling $116,402,019.57 in favor of Pacific Alliance and against Mr. Kwok. **See NYSCEF No. 716 at 2**.

These rulings subsequently formed the operative basis for the appellate proceedings described below.

---------------------------------------------------------------------------------

## II. Appellate Review Initiated Before The First Department

Following entry of judgment, Mr. Kwok filed a Notice of Appeal to the Appellate Division, First Department.

The Notice of Appeal expressly sought review of the February 3, 2021 Judgment, together with the underlying September 15, 2020 and December 18, 2020 rulings that formed the basis of that judgment. **See Index No. 652077/2017, NYSCEF No. 725, N.Y. Sup. Ct.**

The appeal proceeded through full appellate briefing.

The appellant's submissions challenged, among other things:

(a) the propriety of the trial court's **judicial-estoppel ruling precluding challenges to the authenticity of certain transaction documents;**

(b) the grant of summary judgment under the 2011 Personal Guarantee;

PUBLIC VERSION

(c) the trial court's determination that the 2013 Deed of Settlement had terminated and that the 2011 Loan Facility and 2011 Personal Guarantee had reverted to full force and effect;

(d) **the rejection of asserted factual disputes concerning authenticity, execution, and asserted forgery-related challenges**; and

(e) the damages award and mitigation-related determinations.

**See Appellant's Brief, Appellate Division, First Department, Case No. 2021-00740, NYSCEF No. 12.**

The respondent's brief likewise addressed those issues in detail, including extended argument concerning:

(a) judicial estoppel;

(b) prior admissions concerning authenticity;

(c) alleged forgery assertions;

(d) summary judgment; and

(e) damages and mitigation.

**See Plaintiff-Respondent's Brief, Appellate Division, First Department,  Case No. 2021-00740, NYSCEF No. 14, at 5-6, 25-47.**

The respondent specifically characterized the appeal as presenting challenges to the trial court's rulings barring appellant from contesting the authenticity of the transaction documents and to the resulting liability and damages determinations.

A reply brief was subsequently filed. **See Reply Brief, Appellate Division, First Department, Case No. 2021-00740, NYSCEF No. 16.**

The reply brief continued to address the judicial-estoppel rulings, authenticity-related disputes, liability determinations, and damages-related issues previously presented in the parties' appellate submissions.

**PUBLIC VERSION**

The appeal therefore proceeded beyond the notice stage into fully briefed appellate review.

The parties therefore completed merits briefing before the Appellate Division, and the appellate process had advanced to the stage of fully briefed merits review concerning the authenticity-related issues, liability determinations, and damages rulings reflected in the state-court judgment. The appellate issues therefore appear to have been positioned for merits review before the subsequent events described below intervened.

---

## III. Interruption Of Appellate Review

The record further reflects that appellate briefing in the First Department had been completed and that the appeal had progressed to the stage of merits review.

Before the Appellate Division adjudicated the appeal, however, Ho Wan Kwok commenced a voluntary Chapter 11 proceeding in the United States Bankruptcy Court for the District of Connecticut on February 15, 2022, Case No. 22-50073. The bankruptcy petition was filed under Chapter 11 and sought relief pursuant to Title 11 of the United States Code. **See United States Bankruptcy Court for the District of Connecticut, Case No. 22-50073, ECF No. 1.**

The commencement of the Chapter 11 case was promptly reported to the Appellate Division. By Suggestion of Bankruptcy dated February 16, 2022, counsel advised the First Department that a Chapter 11 petition had been filed and that the automatic stay provisions of 11 U.S.C. § 362(a) were implicated. **See Appellate Division, First Department, Case No. 2021-00740, NYSCEF No. 18.**

PUBLIC VERSION

Thereafter, by correspondence dated March 25, 2022, appellate counsel advised the Appellate Division that the bankruptcy case remained pending and that the appeal remained automatically stayed pursuant to 11 U.S.C. § 362(a). **See Appellate Division, First Department, Case No. 2021-00740, NYSCEF No. 20**.

Accordingly, although the appellate process had advanced beyond the notice stage and through full briefing, the merits issues presented on appeal—including the judicial-estoppel rulings, authenticity-related disputes, liability determinations, and damages rulings challenged in the briefs—appear not to have been adjudicated by the Appellate Division before the bankruptcy stay intervened.

The presently reviewed record therefore appears to reflect a fully briefed appeal that was stayed following commencement of the Chapter 11 case, rather than adjudicated on the merits, dismissed, or otherwise disposed of.

The commencement of the Chapter 11 case therefore appears to have marked the procedural transition through which the judgment and the appellate proceedings described above became associated with the subsequent bankruptcy-related proceedings discussed below.

The appellate review process therefore appears to have been interrupted while substantive challenges to the state-court rulings and resulting judgment remained pending and unresolved before the Appellate Division.

Following entry of the February 3, 2021 judgment, post-judgment enforcement proceedings continued in New York Supreme Court. Those proceedings ultimately resulted in a February 9, 2022 decision and related contempt orders (**Index No. 652077/2017, NYSCEF Nos. 1181-1183, N.Y. Sup. Ct.**), which expressly arose from efforts to enforce the

**PUBLIC VERSION**

judgment and from disputes concerning assets alleged to be subject to execution. The February 9, 2022 decision expressly identified the February 3, 2021 judgment (**NYSCEF No. 716**) as the judgment being enforced and described the ensuing proceedings as arising from efforts to locate, restrain, and execute against assets allegedly subject to that judgment. **See NYSCEF No. 1181 at 1-2.**

The February 9, 2022 decision and related contempt orders (**NYSCEF Nos. 1181-1183**) further reflected a contempt-related payment obligation of **$134,000,000.00** in addition to the February 3, 2021 judgment (NYSCEF No. 716). Subsequent bankruptcy filings later identified Pacific Alliance Asia Opportunity Fund as the debtor's largest unsecured creditor and reflected a claim amount of approximately **$254 million.** That amount appears generally consistent with the combined effect of the February 3, 2021 judgment (**$116,402,019.57**) and the February 9, 2022 contempt-related payment obligation (**$134,000,000.00**) reflected in **NYSCEF Nos. 1181-1183**.

Although distinct from the judgment itself, the February 9, 2022 decision (**NYSCEF Nos. 1181-1183**) and related contempt orders repeatedly referenced and operated upon rights established by the February 3, 2021 judgment (**NYSCEF No. 716**). Subsequent proceedings frequently referenced the February 9, 2022 decision (**NYSCEF Nos. 1181-1183**) and related enforcement proceedings rather than the February 3, 2021 judgment (**NYSCEF No. 716**) directly, thereby reflecting one procedural pathway through which the judgment entered the broader litigation record.

------------------------------------------------------------------------

PUBLIC VERSION

## IV. Subsequent Appearance of the Judgment Across Successive Proceedings

Petitioner further notes that the resulting judgment subsequently appeared across multiple later proceedings, jurisdictions, and procedural contexts as part of the broader factual and procedural framework concerning creditor claims, bankruptcy administration, asset-recovery efforts, alleged asset-concealment structures, trustee investigations, and related litigation.

The judgment subsequently appeared, was referenced, and was incorporated into the factual and procedural narratives of, among other proceedings:

(1) the Chapter 11 proceedings commenced in the United States Bankruptcy Court for the District of Connecticut, Case No. 22-50073;

(2) proceedings administered by the Chapter 11 Trustee following appointment of the Trustee in that case;

(3) related adversary proceedings commenced by the Trustee; and

(4) later proceedings associated with the criminal case pending in the Southern District of New York.

------------------------------------------------------------------------------------------

### A. Appearance of the Judgment in the Chapter 11 Proceedings

The record first reflects incorporation of the judgment into the Chapter 11 proceedings themselves. In the bankruptcy filings submitted upon commencement of the Chapter 11 case, Pacific Alliance Asia Opportunity Fund—the creditor that had obtained the February 3, 2021 judgment then under appellate review—was listed as the debtor's largest unsecured creditor, with a litigation-related claim of approximately **$254 million.**

PUBLIC VERSION

**See United States Bankruptcy Court for the District of Connecticut, Case No. 22-50073, ECF No. 1 at 1, 10; ECF No. 4 at 1.**

The amount reflected in the bankruptcy filings appears to correspond, at least in substantial part, to the February 3, 2021 judgment (**NYSCEF No. 716**) together with additional contempt-related sanctions arising from subsequent enforcement proceedings (**NYSCEF Nos. 1181-1183**).

The record therefore appears to reflect that the judgment continued to function as part of the creditor-related and asset-recovery framework present within the Chapter 11 proceedings after appellate review of the underlying state-court rulings had been interrupted by the bankruptcy stay.

Thereafter, filings in the Chapter 11 case itself reflected continued incorporation of the PAX litigation and resulting judgment into the administration of the bankruptcy estate. In submissions filed in the Chapter 11 proceedings, the Trustee described the 2017 PAX litigation, the resulting judgment, subsequent collection efforts, and related disputes concerning enforcement and asset recovery. Those events were incorporated into the Trustee's broader description of creditor relationships, alleged asset-concealment structures, disputes concerning asset recovery, and circumstances leading to the commencement and administration of the Chapter 11 case. **See United States Bankruptcy Court for the District of Connecticut, Case No. 22-50073, ECF No. 580 at 21–25.**

-------------------------------------------------------------------------------

PUBLIC VERSION

## B. Appearance of the Judgment in Trustee-Administered Adversary Proceedings

The same judgment later appeared in trustee-administered adversary proceedings. For example, in an adversary complaint filed by the Chapter 11 Trustee on February 11, 2024, the Trustee expressly described the 2017 PAX litigation, alleged that PAX obtained a judgment against the debtor on February 3, 2021 in the amount of $116,402,019.57, and further referenced subsequent enforcement efforts relating to assets allegedly connected to the debtor. The complaint incorporated the judgment into the Trustee's broader factual narrative concerning creditor collection efforts, alleged asset-concealment structures, and alleged efforts to hinder, delay, or defraud creditors. **See United States Bankruptcy Court for the District of Connecticut, Case No. 22-50073, ECF No. 2708 at 4-9 (Adv. Compl. filed Feb. 11, 2024).**

---

## C. Appearance of the Judgment in Subsequent Criminal Proceedings

### C.1. Detention-Related Submissions

The judgment later appeared in detention-related submissions filed in the criminal proceedings commenced in the Southern District of New York. In seeking detention and opposing pretrial release, the Government described the 2017 PAX litigation, the resulting judgment, subsequent contempt findings, and related enforcement proceedings as part of a broader narrative concerning alleged asset concealment, litigation conduct, obstruction, and creditor-related disputes. The Government further incorporated the subsequent Chapter 11 case and bankruptcy-court findings into that narrative, including allegations concerning interference with trustee administration, encouragement of unsupported claims in the

PUBLIC VERSION

bankruptcy proceedings, and conduct allegedly affecting administration of the estate. **See United States v. Guo, No. 23-CR-118 (AT), Dkt. No. 7 at 12-16; Dkt. No. 26 at 8-9, 14-15.**

----------------------------------------------------------------------

## C.2. Detention Rulings and Appellate Review

The same underlying litigation history subsequently appeared in detention rulings issued during the criminal proceedings. In denying release pending trial, the district court discussed the February 9, 2022 contempt order entered in the PAX litigation, noted the commencement of Chapter 11 proceedings shortly thereafter, and referenced findings concerning concealment of assets, interference with creditor-recovery efforts, harassment of the Chapter 11 Trustee and related parties, and disruption of bankruptcy administration. The court incorporated those matters into its analysis of flight risk, obstruction, danger to the community, and the adequacy of proposed release conditions. The detention ruling was subsequently affirmed on appeal, with the Court of Appeals concluding that it could not identify clear error in the district court's findings concerning flight risk, obstruction of justice, danger to the community, and the inadequacy of release conditions. **See United States v. Guo, No. 23-CR-118 (AT), Dkt. No. 51 at 8–13; Dkt. No. 87.**

----------------------------------------------------------------------

## C.3. Renewed Detention Litigation

The same underlying contempt findings, bankruptcy proceedings, trustee-related findings, asset-concealment findings, and obstruction-related allegations continued to appear in subsequent detention litigation. In opposing Defendant's renewed motion for pretrial release, the Government again relied upon the February 9, 2022 contempt order,

PUBLIC VERSION

bankruptcy-court injunctions, allegations that Defendant encouraged followers to file claims intended to burden the bankruptcy estate and increase trustee-related expenses, allegations of harassment directed toward the Chapter 11 Trustee and related parties, and the district court's prior findings concerning concealment of assets, noncompliance with court orders, and obstruction-related conduct. The renewed motion was subsequently denied. In doing so, the district court revisited and reaffirmed its earlier findings concerning flight risk, obstruction, economic danger, asset concealment, and bankruptcy-related conduct, including prior findings concerning allegations that Defendant had encouraged followers to pursue protests directed at the Chapter 11 Trustee and counsel, to file baseless claims in the bankruptcy proceedings, and to engage in conduct that interfered with administration of the bankruptcy estate. **See United States v. Guo, No. 23-CR-118 (AT), Dkt. No. 192 at 10–12, 28–30; Dkt. No. 216 at 8–10.**

--------------------------------------------------------------------------------

### C.4. Sentencing Proceedings

Likewise, in a sentencing submission filed in the criminal case pending in the Southern District of New York, the Government again described the 2017 PAX litigation, referenced the resulting judgment and subsequent judgment-enforcement efforts, discussed related contempt proceedings, and incorporated those events into a broader narrative concerning the debtor's later bankruptcy proceedings, trustee investigations, and alleged obstruction-related conduct. **See United States v. Guo, No. 23-CR-118 (AT), Government Sentencing Memorandum, Dkt. No. 833 at 22-23.**

The sentencing submission thus reflected continued incorporation of the same underlying judgment and related litigation history into the

PUBLIC VERSION

Government's narrative at a substantially later procedural stage of the criminal proceedings.

--------------------------------------------------------------------------------

## D. Continued Reliance on the Judgment Following Interruption of Appellate Review

Subsequent filings across these proceedings therefore repeatedly reflected the existence of the judgment and continued to incorporate the judgment into broader narratives concerning creditor claims, collection efforts, alleged asset-concealment structures, bankruptcy administration, trustee investigations, and related litigation involving the debtor.

At the same time, the presently available record does not appear to reflect completion of appellate review concerning the issues raised in the appellate briefs previously filed before the Appellate Division. As discussed above, the appeal appears to have been interrupted following commencement of the Chapter 11 case before any merits determination was issued concerning the appellate challenges asserted against the underlying judgment.

Questions may arise concerning the extent to which later proceedings incorporated the existence of a judgment whose underlying rulings had been subjected to appellate challenge before appellate review was interrupted.

Accordingly, although the resulting judgment continued to appear across multiple later proceedings and was repeatedly incorporated into subsequent factual and procedural narratives, the presently reviewed record appears to reflect continued downstream reliance upon the existence of the judgment while separately not reflecting completion of

**PUBLIC VERSION**

appellate adjudication concerning the issues raised in the previously filed appeal or any merits determination resolving those appellate challenges.

---

## V. Continuity And Reviewability Concerns

The issue identified herein is not whether any authenticity-related challenge, liability challenge, damages challenge, or appellate argument should ultimately succeed.

Petitioner further notes that the Court previously received a separate notice addressing continuity, reviewability, and cross-stage record-formation concerns arising from later stages of related proceedings. See In re DX, No. 26-563, Dkt. No. 39.1 (2d Cir.) (received May 22, 2026). The present Notice addresses a different segment of the broader procedural sequence reflected across the state-court, appellate, bankruptcy, adversary, and criminal proceedings discussed herein.

Nor does Petitioner seek review of any state-court ruling, reconsideration of any judgment, or adjudication of any factual dispute.

Rather, the concern identified is structural in nature and relates to continuity and reviewability of the broader adjudicative record.

The record presently reviewed appears to reflect the following sequence:

(1) operative transaction documents, including the March 16, 2011 Personal Guarantee and related agreements, became the subject of judicial-estoppel rulings, summary-judgment rulings, damages determinations, and entry of judgment in the New York proceedings;

(2) those rulings were thereafter subjected to appellate review through a fully briefed appeal before the Appellate Division, First Department;

**PUBLIC VERSION**

(3) the appeal progressed through full merits briefing, including briefing concerning judicial estoppel, authenticity-related disputes, liability determinations, and damages determinations;

(4) the appellate review process was subsequently interrupted following commencement of the Chapter 11 proceedings and application of the automatic stay;

(5) no merits determination by the Appellate Division appears within the record presently reviewed and available to Petitioner;

(6) notwithstanding the interruption of appellate review, the resulting judgment subsequently appeared throughout later bankruptcy proceedings, trustee-administered proceedings, adversary proceedings, criminal proceedings, detention-related litigation, appellate detention review, sentencing proceedings, and related litigation as part of broader factual and procedural narratives concerning creditor claims, asset-recovery efforts, bankruptcy administration, trustee investigations, and related disputes; and

(7) the record presently reviewed does not appear to reflect any completed adjudicative mechanism resolving the appellate issues that had previously been presented for review.

Under such circumstances, questions may arise concerning how appellate challenges that appear not to have been adjudicated on the merits are reflected within the broader procedural history and cross-proceeding record that subsequently developed.

Questions may arise concerning the extent to which later proceedings incorporated the existence of a judgment whose underlying rulings had been subjected to appellate challenge before appellate review was interrupted.

**PUBLIC VERSION**

The concern identified is not whether the judgment existed, nor whether subsequent tribunals were entitled to reference its existence. Rather, the concern is whether the record transparently reflects the relationship between:

(a) the appellate challenges previously presented for review;

(b) the interruption of appellate review;

(c) the subsequent incorporation of the resulting judgment into later proceedings; and

(d) the continued appearance of that judgment within later factual and procedural narratives across multiple forums and procedural stages.

Where a judgment continues to appear as a recurring component of the operative historical record across successive proceedings, while appellate review of the underlying challenged rulings appears to have been interrupted prior to adjudication, questions may arise concerning continuity, traceability, and reviewability of the broader adjudicative record.

Petitioner respectfully submits that these questions concern continuity, traceability, reviewability, and cross-proceeding record formation rather than the substantive correctness of any ruling issued by any court.

----------------------------------------------------------------

## VI. Cross-Proceeding Record Formation

The concern identified in this Notice extends beyond any particular ruling, judgment, document, or disputed factual assertion.

Rather, it concerns the manner in which adjudicative history is reflected across successive proceedings that are separated by jurisdiction, procedural posture, and institutional function.

**PUBLIC VERSION**

The record presently reviewed appears to reflect the following progression:

(1) operative factual and legal disputes were litigated in the New York state-court proceedings;

(2) appellate review of those disputes was formally initiated and advanced through full merits briefing before the Appellate Division;

(3) appellate review was interrupted following commencement of Chapter 11 proceedings and application of the automatic stay;

(4) the resulting judgment nevertheless continued to appear within subsequent bankruptcy proceedings, trustee-administered proceedings, adversary proceedings, criminal proceedings, detention-related litigation, appellate detention review, sentencing proceedings, and related litigation as part of the historical framework surrounding the debtor and creditor relationships; and

(5) the record presently reviewed does not appear to reflect completion of the interrupted appellate review process or any subsequent adjudicative mechanism expressly resolving the appellate issues previously presented.

Under such circumstances, the resulting record may no longer transparently reflect how appellate challenges that remained pending at one procedural stage relate to historical reference points repeatedly referenced at later procedural stages.

As successive proceedings incorporate portions of prior procedural history for different purposes and in different institutional settings, the relationship between unresolved appellate issues and later historical narratives may become increasingly difficult to trace from any single procedural record.

**PUBLIC VERSION**

The concern identified is not that subsequent proceedings referenced the judgment.

Nor is the concern that later tribunals were required to revisit issues already addressed elsewhere.

Rather, the concern is whether the broader record clearly reflects the procedural relationship between:

(a) the underlying state-court rulings;

(b) the appellate challenges directed at those rulings;

(c) the interruption of appellate review;

(d) the subsequent incorporation of the resulting judgment into later proceedings; and

(e) the continued appearance of the resulting judgment within later bankruptcy, adversary, criminal, detention-related, appellate, and sentencing proceedings.

Where a judgment continues to function as part of the operative historical record across multiple proceedings while review of challenges directed to that judgment appears to have been interrupted before adjudication, questions may arise concerning the transparency, traceability, and reviewability of the resulting procedural record.

Accordingly, the issue identified is structural rather than substantive. It concerns the formation, continuity, traceability, and reviewability of the record across successive proceedings rather than the ultimate correctness of any determination issued by any tribunal.

-------------------------------------------------------------------------

PUBLIC VERSION

## VII. Limited Purpose Of This Notice

Petitioner respectfully emphasizes that this Notice is not submitted for the purpose of obtaining substantive review of any state-court ruling, bankruptcy ruling, trustee action, or judgment.

Specifically, Petitioner does not request:

(1) reversal, modification, vacatur, or reconsideration of any state-court determination;

(2) adjudication of the authenticity, validity, execution, enforceability, or legal effect of any transaction document;

(3) adjudication concerning liability, damages, debt validity, creditor status, claim allowance, or claim priority;

(4) review of any issue presently pending before any other tribunal;

(5) resolution of any factual dispute identified in any state-court, bankruptcy-court, or related proceeding; or

(6) any form of substantive relief.

Petitioner further does not contend that the existence of unresolved appellate issues, standing alone, necessarily undermines, invalidates, impairs, or otherwise calls into question any subsequent ruling, judgment, order, proceeding, or determination.

Rather, the purpose of this Notice is limited to identifying a sequence of procedural events reflected in the publicly available record, including:

(a) entry of state-court rulings and judgment;

(b) initiation of appellate review;

(c) interruption of that appellate review following commencement of Chapter 11 proceedings;

PUBLIC VERSION

(d) subsequent appearance and incorporation of the resulting judgment within later proceedings; and

(e) the apparent absence, within the record presently reviewed, of any completed adjudicative process resolving the appellate issues previously presented.

This Notice is therefore submitted solely for informational, record-preservation, continuity, and reviewability purposes.

Petitioner respectfully submits that identification of these procedural relationships may assist in preserving transparency concerning the formation, continuity, and development of the broader adjudicative record across successive proceedings and jurisdictions.

No substantive determination is requested.

--------------------------------------------------------------------------------

# VIII. Conclusion

Petitioner respectfully submits that the record presently reviewed appears to reflect a procedural sequence extending across multiple proceedings and jurisdictions:

(1) state-court rulings and a final judgment were entered concerning the March 16, 2011 Personal Guarantee and related transaction documents;

(2) those rulings and the resulting judgment became the subject of a fully briefed appeal before the Appellate Division, First Department;

(3) the appeal advanced through full merits briefing addressing, among other matters, judicial-estoppel rulings, authenticity-related disputes, liability determinations, and damages determinations;

PUBLIC VERSION

(4) appellate review was subsequently interrupted following commencement of Chapter 11 proceedings and application of the automatic stay;

(5) the resulting judgment nevertheless continued to appear within later bankruptcy proceedings, trustee-administered proceedings, adversary proceedings, criminal proceedings, detention-related litigation, appellate detention review, sentencing proceedings, and related litigation as part of broader factual and procedural narratives concerning creditor claims, asset-recovery efforts, bankruptcy administration, trustee investigations, and related disputes; and

(6) the record presently reviewed does not appear to reflect completion of appellate adjudication concerning the issues previously presented for review.

Under such circumstances, the record may warrant careful consideration of the extent to which the broader adjudicative record transparently reflects the relationship between:

(a) the underlying state-court rulings;

(b) the appellate challenges directed to those rulings;

(c) the interruption of appellate review; and

(d) the subsequent incorporation and continued appearance of the resulting judgment within later proceedings across multiple forums and procedural stages.

**The materials reviewed by Petitioner therefore appear to reflect not merely subsequent reference to the judgment, but progressive incorporation of the judgment into multiple later procedural and factual frameworks extending across bankruptcy, adversary, criminal, detention-related, and sentencing-related proceedings.**

PUBLIC VERSION

**The significance of the interrupted appellate process is therefore not limited to the original state-court action itself, but appears to extend to a broader sequence of later proceedings in which the existence of the judgment became part of the operative historical record and was subsequently incorporated into factual and procedural narratives concerning creditor claims, bankruptcy administration, trustee investigations, asset-recovery efforts, and related litigation.**

Petitioner respectfully submits that these observations raise issues concerning continuity, traceability, reviewability, and cross-proceeding record formation, including the manner in which judicial determinations become incorporated into later factual and procedural records across multiple proceedings and jurisdictions.

This Notice is submitted solely to identify those procedural relationships as reflected in the presently available record and to preserve awareness of the resulting continuity, traceability, reviewability, and record-formation considerations.

No substantive relief is requested.

**The observations set forth herein are offered solely to assist in understanding how issues presented for review at one procedural stage may retain continuing procedural significance after subsequent transitions in jurisdiction, forum, and procedural posture.**

---------------------------------------------------------------------------------

Respectfully submitted,

DX $\mathcal{D\lambda}$

Petitioner, Pro Se

Dated: June 16 , 2026