# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

## MOTION INFORMATION STATEMENT

**Docket Number(s):** 26-563

**Caption [use short title]**

**Motion for:** Emergency Motion for Temporary Administrative Stay to Preserve Appellate Review and Record Integrity

In re: DX, Petitioner

Set forth below precise, complete statement of relief sought:

Temporary administrative relief, including a temporary stay if appropriate, to preserve this Court's ability to conduct meaningful appellate review before the June 29, 2026 sentencing materially alters the present procedural posture.

**MOVING PARTY:** DX

**OPPOSING PARTY:** United States of America

☐ Plaintiff ☐ Defendant ☑ Appellant/Petitioner ☐ Appellee/Respondent

**MOVING ATTORNEY:** Pro Se

**OPPOSING ATTORNEY:** United States Attorney's Office, Southern District of New York

[name of attorney, with firm, address, phone number and e-mail]

DX

Pro Se

Identity and contact information filed under seal

Nathan Rehn, Assistant United States Attorney

26 Federal Plaza, 37th Floor, New York, NY 10278

(212) 637-2354

Court- Judge/ Agency appealed from: United States District Court, Southern District of New York, Hon. Analisa Torres, U.S. District Judge

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1): ☑ Yes ☐ No (explain):

Opposing counsel's position on motion: ☐ Unopposed ☐ Opposed ☑ Don't Know
Does opposing counsel intend to file a response: ☐ Yes ☐ No ☑ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below? ☐ Yes ☑ No
Has this relief been previously sought in this court? ☐ Yes ☑ No

Requested return date and explanation of emergency:
Sentencing is scheduled for June 29, 2026. Petitioner seeks temporary administrative relief before sentencing materially alters the present procedural posture and the Court's ability to conduct meaningful appellate review of issues already presented through Petitioner's prior submissions.

Is the oral argument on motion requested? ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set? ☐ Yes ☑ No If yes, enter date:

**Signature of Moving Attorney:**
Dx  Date: June 26, 2026  Service: ☐ Electronic ☑ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

PUBLIC VERSION

-------------------------------------------------------------------------------------

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

In re: DX, Petitioner

No. 26-563

(Arising from United States v. Ho Wan Kwok, No. 1:23-cr-00118 (AT)

(S.D.N.Y.))

-------------------------------------------------------------------------------------

# Emergency Motion for Temporary Administrative Stay to Preserve Appellate Review and Record Integrity

-------------------------------------------------------------------------------------

## I. Introduction

Petitioner respectfully seeks a temporary administrative stay for the limited purpose of preserving this Court's ability to conduct meaningful appellate review **before sentencing proceeds on June 29, 2026**.

This application does not request review of any state-court judgment, criminal conviction, or sentencing determination. Nor does Petitioner request adjudication of the merits of any authenticity dispute, liability issue, forfeiture issue, or sentencing issue. Rather, **this application concerns whether sentencing should proceed while the adjudicative record upon which significant portions of the later federal proceedings ultimately rely has not yet become judicially reviewable in its complete procedural context**.

Since Petitioner's prior submissions were presented to this Court—including Petitioner's SUPPLEMENTAL MEMORANDUM previously **granted and considered by this Court** (In re DX, No. 26-563, **Dkt. Nos. 25.1**, 35.1 at 2, 2d Cir.), Petitioner's NOTICE REGARDING

**PUBLIC VERSION**

UNRESOLVED APPELLATE REVIEW AND CROSS-PROCEEDING RECORD CONTINUITY (No. 26-563, Dkt. No. 44.1, 2d Cir.), and Petitioner's NOTICE REGARDING PROGRESSIVE INCORPORATION, ADOPTION, REAFFIRMATION, AND REUTILIZATION OF PRIOR JUDICIAL FINDINGS (the paper copy of which is presently in transit to the Court and is expected to be delivered on June 26, 2026, a courtesy electronic copy being attached hereto for the Court's convenience), the procedural posture has materially changed.

Most significantly, after previously concluding that the parties' "voluminous sentencing submissions" presented "the complexity of the outstanding issues" sufficient to postpone sentencing, the district court has now determined that sentencing should proceed. (United States v. Guo, No. 23-CR-118 (AT), Dkt. Nos. 837, 855, S.D.N.Y.) The present application therefore concerns not the correctness of any particular unresolved issue, but whether the resulting procedural posture warrants temporary preservation of this Court's future ability to conduct meaningful appellate review before sentencing materially alters the present procedural posture.

## II. The District Court Previously Determined That Outstanding Issues Required Adjournment of Sentencing.

On April 23, 2026, the district court adjourned sentencing after concluding that the parties' "voluminous sentencing submissions" presented "the complexity of the outstanding issues" sufficient to postpone sentencing for more than two months. The court expressly relied upon the complexity of those unresolved issues in determining that sentencing should not proceed as originally scheduled. (Dkt. No. 837.)

PUBLIC VERSION

## III. The Public Record Does Not Reflect Intervening Proceedings Resolving the Complexity That Previously Required Adjournment.

The public docket between April 23 and June 25, 2026 reflects no evidentiary hearing, no factual findings, and no intervening adjudicative proceedings demonstrating that the complexity identified by the district court had been resolved.

To the contrary, on June 25, 2026, defense counsel again advised the district court that multiple substantial issues remained outstanding, including issues relating to Rule 17(c), Brady, third-party ancillary proceedings under 21 U.S.C. § 853(n), appointment of a special master, and the scope of any personal money judgment, and again requested adjournment on the ground that sentencing could not fairly proceed before those issues were resolved. (No. 23-CR-118 (AT), Dkt. Nos. 853, 855, S.D.N.Y.)

The district court denied that request the same day. The court concluded that sentencing could proceed without an evidentiary hearing, stated that certain matters would be addressed at sentencing, and further determined that ancillary proceedings under 21 U.S.C. § 853(n) and appointment of a special master need not be resolved before sentencing and would instead be addressed "in due course." (Dkt. No. 855.)

Accordingly, while the district court ultimately determined that sentencing could proceed, the public record does not reflect intervening proceedings resolving the complexity that had previously justified adjournment. Instead, the record reflects that several identified matters were either deferred until a later stage or determined not to require pre-sentencing resolution.

PUBLIC VERSION

## IV. The Present Procedural Posture Directly Implicates the Structural Record-Reviewability Concerns Previously Presented to This Court.

Petitioner's prior submissions did not ask this Court to determine whether any particular state-court judgment, criminal ruling, or factual finding was correct or incorrect. Rather, those submissions identified structural concerns regarding continuity, traceability, reviewability, and cross-proceeding record formation, as reflected in the publicly available record. (See No. 26-563, Dkt. No. 44.1, 2d Cir.; NOTICE REGARDING PROGRESSIVE INCORPORATION, ADOPTION, REAFFIRMATION, AND REUTILIZATION OF PRIOR JUDICIAL FINDINGS §§ VII–IX)

Specifically, the publicly available record reflects that the February 3, 2021 judgment (Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, Index No. 652077/2017, NYSCEF No. 716, N.Y. Sup. Ct.) became the subject of appellate proceedings before the Appellate Division, First Department (Case No. 2021-00740), where the appellate briefing challenged, among other issues, the trial court's judicial-estoppel ruling precluding challenges to the authenticity of operative transaction documents, including the 2011 Personal Guarantee. See Index No. 652077/2017, NYSCEF No. 549 at 3–5, N.Y. Sup. Ct.; Appellate Division, First Department, Case No. 2021-00740, NYSCEF Nos. 12, 14, 16. Those appellate proceedings advanced through full merits briefing before becoming subject to the Chapter 11 stay.

Petitioner's accompanying Notice further identifies portions of the publicly available record reflecting that findings originating in the post-judgment enforcement proceedings (Index No. 652077/2017, NYSCEF Nos. 1181–1183, N.Y. Sup. Ct.) were progressively incorporated into the Government's detention submissions (No. 23-CR-118 (AT), Dkt. Nos. 7,

PUBLIC VERSION

26, S.D.N.Y.), adopted within the district court's detention determination (No. 23-CR-118 (AT), Dkt. No. 51, S.D.N.Y.), reaffirmed in subsequent detention proceedings (No. 23-CR-118 (AT), Dkt. Nos. 192, 216, S.D.N.Y.), and thereafter continued to appear throughout later detention-related proceedings and subsequent criminal sentencing proceedings. (See NOTICE REGARDING PROGRESSIVE INCORPORATION, ADOPTION, REAFFIRMATION, AND REUTILIZATION OF PRIOR JUDICIAL FINDINGS §§ III–VII.)

The significance of the present procedural posture therefore lies not in the merits of any individual unresolved issue, but in its relationship to those previously identified structural concerns. For the first time, the Court is presented with a concrete procedural circumstance in which sentencing is scheduled to proceed while the resulting adjudicative record has not yet become judicially reviewable in its complete procedural context. The concern presented is therefore one of procedural integrity rather than substantive correctness.

Dkt. Nos. 837 and 855 therefore do not merely present a scheduling issue. Rather, they present the first concrete procedural circumstance in which the structural record-reviewability concerns previously presented to this Court bear directly upon whether meaningful appellate review can later be conducted.

This concern is consistent with Petitioner's previously submitted Supplemental Memorandum regarding the necessity of a judicially reviewable record. (Dkt. No. 25.1.)

PUBLIC VERSION

## V. Temporary Preservation Is Warranted to Protect This Court's Ability to Conduct Meaningful Appellate Review.

The requested relief is not sought to prevent sentencing indefinitely, nor to require immediate adjudication of the issues identified in Petitioner's prior submissions.

Rather, the requested temporary administrative stay is sought solely to preserve this Court's ability to determine whether sentencing should proceed before meaningful appellate consideration of the broader continuity, traceability, reviewability, and record-formation concerns previously presented becomes materially more difficult following entry of final judgment.

Absent temporary preservation of the present procedural posture, sentencing may materially alter the record before this Court has had an opportunity to determine whether the broader record-reviewability concerns previously identified warrant further judicial consideration.

## VI. Request for Relief

Petitioner respectfully requests that this Court enter a temporary administrative stay of sentencing for such period as the Court deems appropriate in order to preserve its ability to conduct meaningful appellate review and to protect the integrity and reviewability of the resulting record.

Respectfully submitted,

DX

Petitioner, Pro Se

Dated: June 26, 2026

--------------------------------------------------------------------------------

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

In re: DX, Petitioner

No. 26-563

(Arising from United States v. Ho Wan Kwok, No. 1:23-cr-00118 (AT)

(S.D.N.Y.))

--------------------------------------------------------------------------------

# CERTIFICATE OF SERVICE

--------------------------------------------------------------------------------

I, DX, hereby certify under penalty of perjury that on June 26, 2026, I served true and correct copies of the following documents:

(1) Motion Information Statement (Form T-1080);

(2) Emergency Motion for Temporary Administrative Stay to Preserve Meaningful Appellate Review and Record Integrity;

(3) Notice Regarding Progressive Incorporation, Adoption, Reaffirmation, and Reutilization of Prior Judicial Findings (Supplemental Copy); and

(4) Certificate of Service.

Service was made upon the following counsel by electronic mail and by registered mail, postage prepaid, with tracking:

**Nathan Rehn**
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
26 Federal Plaza, 37th Floor
New York, NY 10278

Email: nathan.rehn@usdoj.gov

Executed on June 26, 2026.

DX

Petitioner, Pro Se

PUBLIC VERSION

---------------------------------------------------------------------------------

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

In re: DX, Petitioner

No. 26-563

(Arising from United States v. Ho Wan Kwok, No. 1:23-cr-00118 (AT)

(S.D.N.Y.))

---------------------------------------------------------------------------------

# NOTICE REGARDING PROGRESSIVE INCORPORATION, ADOPTION, REAFFIRMATION, AND REUTILIZATION OF PRIOR JUDICIAL FINDINGS

---------------------------------------------------------------------------------

I. Limited Purpose of This Notice ..........................................................2

II. Origin of the Relevant Findings....................................................3

III. Initial Incorporation Into Criminal Detention Litigation....................5

   A. Government Detention Submission................................................5

   B. Expansion and Consolidation Within Subsequent Detention Litigation ...............................................................................6

IV. Distinction Between Historical Reference and Judicial Adoption.......7

V. Judicial Incorporation Within the Detention Analysis .........................8

VI. Subsequent Reliance Upon the Detention Determination....................9

   A. Appellate Affirmance of the Detention Determination.....................9

   B. Subsequent Detention Litigation .......................................10

   C. Subsequent Judicial Reaffirmation................................................11

VII. Progressive Incorporation, Adoption, Reaffirmation, and Reutilization of Findings ..............................................................12

VIII. Traceability and Reviewability Considerations..............................13

IX. Conclusion ...................................................................................14

PUBLIC VERSION

## I. Limited Purpose of This Notice

Petitioner respectfully submits this Notice solely for informational, continuity, traceability, and record-formation purposes.

This Notice is submitted as a continuation of Petitioner's prior Notice concerning unresolved appellate review and cross-proceeding record continuity previously submitted in **No. 26-563, Dkt. No. 44.1 (2d Cir.)**.

That Notice addressed the appearance and continued utilization of the February 3, 2021 judgment (Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, **Index No. 652077/2017, NYSCEF No. 716, N.Y. Sup. Ct.**) across later bankruptcy, adversary, detention, appellate detention, and sentencing proceedings following apparent interruption of appellate review before the **Appellate Division, First Department** (**Case No. 2021-00740, see NYSCEF Nos. 12, 14, 16**).

The present Notice addresses a different but related question. Rather than focusing principally upon continued appearance of the judgment (**NYSCEF No. 716**) itself, the present Notice examines portions of the publicly available record that appear to reflect subsequent incorporation, adoption, reaffirmation, and reutilization of findings originating in post-judgment enforcement proceedings, including findings reflected in the February 9, 2022 Decision and Order and related contempt orders (**Index No. 652077/2017, NYSCEF Nos. 1181–1183, N.Y. Sup. Ct.**), which operated upon and enforced the February 3, 2021 judgment (**NYSCEF No. 716). (See NYSCEF No. 1181 at 1–2.**)

Petitioner does not seek review of any criminal determination, state-court determination, bankruptcy determination, detention ruling, or appellate ruling.

PUBLIC VERSION

Nor does Petitioner request adjudication of any factual dispute, authenticity-related dispute, liability issue, damages issue, forfeiture issue, or sentencing issue.

Rather, this Notice identifies portions of the publicly available record that appear to reflect progressive incorporation, adoption, reaffirmation, and reutilization of prior judicial findings across successive proceedings, including instances in which later tribunals appear to have incorporated earlier findings into subsequent factual and procedural frameworks.

--------------------------------------------------------------------------------

## II. Origin of the Relevant Findings

As discussed more fully in Petitioner's prior Notice (No. 26-563, Dkt. No. 44.1 (2d Cir.)), the February 3, 2021 judgment (NYSCEF No. 716) entered in New York Supreme Court became the subject of appellate proceedings before the Appellate Division, First Department (Case No. 2021-00740). The appeal proceeded through full merits briefing, including Appellant's Brief (NYSCEF No. 12), Respondent's Brief (NYSCEF No. 14), and Reply Brief (NYSCEF No. 16), before the commencement of the Chapter 11 proceedings in the United States Bankruptcy Court for the District of Connecticut, Case No. 22-50073, and the resulting bankruptcy stay. (See Case No. 2021-00740, NYSCEF Nos. 18, 20, Appellate Division, First Department**.)**

The appellate submissions challenged multiple rulings underlying the February 3, 2021 judgment (NYSCEF No. 716), including: (1) **judicial-estoppel rulings that precluded challenges to the authenticity of certain transaction documents;** (2) determinations that the 2013 Deed of Settlement had terminated; (3) conclusions that the 2011 Personal Guarantee had reverted to full force and effect; (4) **summary-judgment**

PUBLIC VERSION

**rulings** establishing liability; and (5) damages-related determinations. (See NYSCEF No. 12; NYSCEF No. 14 at 5-6, 25-47; NYSCEF No. 16. ) The appellate briefing therefore placed before the Appellate Division issues concerning **authenticity-related disputes**, asserted **forgery-related challenges**, liability determinations, and damages rulings arising from the state-court judgment. (See NYSCEF No. 12; NYSCEF No. 14 at 25-47; NYSCEF No. 16.)

Among those issues, the trial court had held that **appellant was judicially estopped from challenging the authenticity of certain operative agreements, including** the 2011 Loan Facility, the **2011 Personal Guarantee**, the 2013 Deed of Settlement, and related Supplemental Deeds, **after appellant denied signing those documents and testified that they were forgeries**. **The court ruled that the documents would be accepted as authentic for purposes of the summary-judgment proceedings.** (See Index No. 652077/2017, NYSCEF No. 549 at 3-5, N.Y. Sup. Ct.) The resulting judicial-estoppel ruling subsequently became one of the issues presented in the appellate briefing.

The present Notice does not address those appellate issues or their merits, and takes no position concerning the correctness of any party's arguments regarding authenticity, liability, damages, or any other issue raised on appeal.

Rather, the present Notice addresses a separate question concerning the subsequent incorporation, adoption, reaffirmation, and reutilization of findings reflected in later post-judgment enforcement proceedings, including NYSCEF Nos. 1181-1183.

The February 9, 2022 decision (NYSCEF No. 1181) expressly identified the February 3, 2021 judgment (NYSCEF No. 716) as the judgment being

PUBLIC VERSION

enforced and described the ensuing proceedings as arising from efforts to locate, restrain, and execute against assets allegedly subject to that judgment.

For ease of reference, the sequence discussed below spans multiple tribunals and procedural stages:

(1) New York Supreme Court, Index No. 652077/2017;
(2) Appellate Division, First Department, Case No. 2021-00740;
(3) United States Bankruptcy Court for the District of Connecticut, Case No. 22-50073;
(4) United States v. Guo, No. 23-CR-118 (AT) (S.D.N.Y.); and
(5) United States of America v. Kwok, No. 23-6421 (2d Cir.).

The February 9, 2022 enforcement proceedings (NYSCEF Nos. 1181–1183) arose after entry of the February 3, 2021 judgment (NYSCEF No. 716) and after appellate review of that judgment had already been initiated and fully briefed. The discussion below focuses not on the merits of the appellate issues themselves, but on the subsequent incorporation, adoption, reaffirmation, and reutilization of findings reflected in those enforcement proceedings across later proceedings.

----------------------------------------------------------------------------------------------------

## III. Initial Incorporation Into Criminal Detention Litigation

### A. Government Detention Submission

United States v. Guo, No. 23-CR-118 (AT), Dkt. No. 7, S.D.N.Y.

The publicly available record appears to reflect that findings originating in the February 9, 2022 contempt proceedings (**NYSCEF Nos. 1181–1183**) were subsequently cited within the Government's initial detention submission in the criminal case. (**See Dkt. No. 7 at 12.**)

PUBLIC VERSION

The Government's submission referenced the underlying judgment obtained by Pacific Alliance Asia Opportunity Fund L.P. ("**PAX**"), Defendant's failure to satisfy that judgment, and the ensuing contempt proceedings conducted by Justice Ostrager. (**See Dkt. No. 7 at 12; NYSCEF No. 716; NYSCEF No. 1181 at 1.**)

The submission further referenced findings reflected in the contempt proceedings, including statements that Defendant had engaged in efforts to avoid and deceive creditors through the use of corporations, trusted associates, and family members, and the state court's description of a "**shell game**" used to shield assets from collection efforts. (**See Dkt. No. 7 at 12; NYSCEF No. 1181 at 1, 7.**)

Those materials were cited within the Government's detention presentation addressing issues that included obstruction, concealment of assets, compliance with judicial directives, litigation-related conduct, and prospective release conditions. (**See Dkt. No. 7 at 12–15, 20–23.**)

---------------------------------------------------------------------------------------------

## B. Expansion and Consolidation Within Subsequent Detention Litigation

United States v. Guo, No. 23-CR-118 (AT), Dkt. No. 26, S.D.N.Y.

The publicly available record further appears to reflect that findings previously referenced in the Government's initial detention submission were subsequently incorporated into a broader detention-related presentation.

In opposing release, the Government expressly referenced both the underlying state-court judgment and the subsequent enforcement-related proceedings, including NYSCEF Nos. 716 and 1181. (See Dkt. No. 26 at 8–9, 14.)

PUBLIC VERSION

The submission further assembled findings originating in multiple proceedings—including state-court proceedings, post-judgment enforcement proceedings, bankruptcy-related proceedings, and other civil litigation—into a consolidated factual framework concerning asset-control structures, nominee ownership arrangements, concealment of assets, litigation-related conduct, and compliance with judicial directives. **(See Dkt. No. 26 at 8–9, 14–15.)**

Among other things, the Government referenced findings concerning the use of shell companies and related structures to shield assets from creditors, and cited the February 9, 2022 Decision and Order (**NYSCEF No. 1181**) as reflecting such findings. (**See Dkt. No. 26 at 14.**)

-------------------------------------------------------------------------------------

## IV. Distinction Between Historical Reference and Judicial Adoption

The distinction between historical reference to a prior proceeding and judicial adoption of findings originating in that proceeding may be significant.

A later tribunal may reference an earlier determination simply as part of the procedural history. Such references are common and generally present no unusual record-formation issues.

A different situation may arise where findings originating in an earlier proceeding become incorporated into the factual framework of a later determination and are thereafter relied upon as part of the reasoning supporting that later determination. Once incorporated into a later determination, an earlier finding may thereafter be encountered in subsequent proceedings through the later determination itself rather than through direct examination of the original proceeding.

PUBLIC VERSION

The publicly available record reviewed by Petitioner appears to reflect more than historical reference with respect to the district court's detention determination (United States v. Guo, **No. 23-CR-118 (AT), Dkt. No. 51 at 8–10, S.D.N.Y.**).

Rather than merely observing that the February 9, 2022 contempt proceedings (**NYSCEF No. 1181**) had occurred (**See Dkt. No. 51 at 8–10.**), the district court relied upon findings concerning concealment of assets, use of corporations, associates, and family members, creditor-related conduct, and violations of court orders in assessing detention-related issues, including matters relating to asset concealment, compliance with judicial directives, obstruction-related concerns, and future litigation conduct. (**See Dkt. No. 51 at 8–10; NYSCEF No. 1181 at 1, 7, 9–10.**)

Accordingly, the record appears to reflect a transition from simple reference to judicial adoption, at least for purposes of the detention analysis. (**See Dkt. No. 51 at 8–10.**)

Whether a later proceeding merely references an earlier finding or adopts it as part of its own factual framework requires proceeding-specific examination.

---------------------------------------------------------------------------------------

## V. Judicial Incorporation Within the Detention Analysis

The district court's detention decision (**Dkt. 51**) incorporated findings reflected in the February 9, 2022 contempt proceedings (**NYSCEF No. 1181**). (**See Dkt. No. 51 at 8–10.**)

The court discussed findings concerning concealment of assets, use of corporations, associates, and family members, and violations of court

**PUBLIC VERSION**

orders in evaluating detention-related issues. (**See Dkt. No. 51 at 8–10; NYSCEF No. 1181 at 1, 7, 9–10.**)

Once incorporated into the detention determination, those findings became part of the factual framework reflected in that determination itself.

The significance of that observation does not depend upon whether the underlying findings were correct or incorrect. Rather, it concerns the manner in which findings originating in one proceeding became incorporated into a later federal judicial determination.

------------------------------------------------------------------------------------

## VI. Subsequent Reliance Upon the Detention Determination

### A. Appellate Affirmance of the Detention Determination

United States of America v. Kwok, No. 23-6421, Dkt. No. 37.1 (2d Cir.)

The publicly available record further appears to reflect that the district court's detention determination (**Dkt. No. 51**), which incorporated portions of prior state-court findings, was subsequently affirmed on appellate review. (**See Dkt. No. 51 at 8–10; No. 23-CR-118 (AT), Dkt. No. 87 at 1–2, S.D.N.Y.**)

The Court of Appeals reviewed the district court's determinations that Defendant presented serious risks of flight, obstruction of justice, and danger to the community, and that no condition or combination of conditions would reasonably assure Defendant's appearance or the safety of the community. Applying the clear-error standard applicable to detention determinations, the Court of Appeals concluded that it could not identify clear error and therefore affirmed the detention order. (**See Dkt. No. 87 at 1–2.**)

PUBLIC VERSION

The appellate disposition appears directed principally toward review of the detention determination itself and does not appear to discuss in detail the underlying state-court enforcement proceedings or the specific findings referenced therein. (**See Dkt. No. 87 at 1–2.**)

Accordingly, the publicly available record appears to reflect appellate affirmance of a detention determination that had already incorporated portions of the prior state-court findings discussed above. The significance of that observation does not depend upon whether any underlying finding was correct or incorrect, but rather upon the manner in which findings originating in one proceeding became incorporated into, and thereafter carried forward through, a later federal judicial determination. (**See Dkt. No. 51 at 8–10; Dkt. No. 87 at 1–2.**)

-------------------------------------------------------------------------------------

## B. Subsequent Detention Litigation

United States v. Guo, No. 23-CR-118 (AT), Dkt. No. 192, S.D.N.Y.

The publicly available record further appears to reflect that, following the district court's detention determination, later detention-related litigation relied extensively upon the detention ruling itself rather than returning to the underlying state-court proceedings from which portions of the detention analysis had been derived. (**See Dkt. No. 192 at 10–15, 23–31.**)

In opposing Defendant's renewed release application, the Government repeatedly referenced findings and conclusions previously made by the district court concerning flight risk, obstruction, asset concealment, compliance with court orders, bankruptcy-related conduct, and related matters. (**See Dkt. No. 192 at 10–15, 23–31.**) The submission likewise appears to rely upon portions of the district court's discussion of the February 9, 2022 contempt proceedings (**NYSCEF No. 1181**), as

**PUBLIC VERSION**

previously incorporated into the detention ruling. (**See Dkt. No. 192 at 28–29; Dkt. No. 51 at 8–10.**)

The publicly available record further appears to reflect that the Government expressly noted that the detention determination had been affirmed by the Court of Appeals. (**See Dkt. No. 192 at 12; Dkt. No. 87 at 1–2.**) Thus, the detention findings appear to have been invoked not only as prior district-court conclusions, but also as conclusions that had subsequently remained undisturbed on appellate review.

Accordingly, the publicly available record appears to reflect a further stage in the progression identified herein. Findings originating in earlier proceedings were incorporated into the detention determination, and later detention-related submissions appear increasingly to have relied upon that detention determination itself as an intervening source of findings, rather than undertaking renewed examination of the underlying state-court record. (**See Dkt. No. 51 at 8–10; Dkt. No. 192 at 10–15, 23–31.**)

---------------------------------------------------------------------------------------

### C. Subsequent Judicial Reaffirmation

United States v. Guo, No. 23-CR-118 (AT), Dkt. No. 216, S.D.N.Y.

The publicly available record further appears to reflect that, when addressing Defendant's renewed bail application, the district court principally relied upon its prior detention determination and repeatedly referenced findings previously made therein. The court noted that it had previously determined that Defendant presented serious risks of flight, obstruction of justice, and economic harm to the community, and further observed that the detention determination had been affirmed on appellate review. (**See Dkt. No. 216 at 1, 6–10.**)

**PUBLIC VERSION**

Rather than undertaking a comprehensive reexamination of the underlying proceedings from which portions of the earlier findings originated, the district court appears largely to have proceeded through the framework of its prior detention ruling. Accordingly, the publicly available record appears to reflect a further stage in the progression identified herein, in which findings previously incorporated into the detention determination were subsequently reaffirmed through later judicial reliance upon that determination itself. By this stage of the procedural sequence, the detention determination appears to have functioned as an intervening source of findings and factual characterizations within subsequent detention-related adjudication. (**See Dkt. No. 216 at 1, 6–10; Dkt. No. 51 at 8–10.**)

---------------------------------------------------------------------------------------

## VII. Progressive Incorporation, Adoption, Reaffirmation, and Reutilization of Findings

The record reviewed by Petitioner appears to reflect a progression extending beyond simple historical reference to earlier proceedings. Rather, findings originating in earlier proceedings appear first to have been incorporated into later litigation positions (**See Dkt. No. 7 at 12; Dkt. No. 26 at 8–9, 14-15**), subsequently adopted within a federal judicial determination (**See Dkt. No. 51 at 8–10.**), and thereafter continued to appear in later proceedings, including renewed detention litigation and related prosecutorial submissions. (**See Dkt. No. 192 at 10–15; Dkt. No. 216 at 6–10; Dkt. No. 833 at 22–23.**)

Once incorporated into the district court's detention determination, those findings appear increasingly to have functioned not merely as findings originating in the underlying state-court proceedings, but as findings

**PUBLIC VERSION**

subsequently associated with, and transmitted through, the federal detention determination itself. (**See Dkt. No. 192 at 10–15, 28–29; Dkt. No. 216 at 6–10.**)

Accordingly, the record reviewed by Petitioner reflects a progression consisting generally of:

(1) the February 3, 2021 judgment (**NYSCEF No. 716**);

(2) subsequent enforcement-related findings reflected in **NYSCEF Nos. 1181-1183**;

(3) incorporation of those findings into criminal filings (**Dkt. Nos. 7, 26**);

(4) judicial adoption of portions of those findings within detention rulings (**Dkt. No. 51**); and

(5) subsequent appearance and reliance upon those detention rulings within later proceedings (**Dkt. Nos. 87, 192, 216**), together with continued appearance of portions of the same underlying litigation history in later prosecutorial submissions (**Dkt. No. 833**).

The record reviewed by Petitioner therefore appears to reflect a progressive incorporation, adoption, reaffirmation, and reutilization of findings across successive proceedings, with later proceedings repeatedly referencing or relying upon determinations that themselves incorporated portions of earlier proceedings.

-------------------------------------------------------------------------------------------

## VIII. Traceability and Reviewability Considerations

The concern identified herein does not relate to the correctness of any prior finding or the authority of any tribunal to reference prior proceedings.

PUBLIC VERSION

Rather, the concern identified relates to traceability and reviewability of the resulting record. **As findings migrate through successive proceedings, later references may increasingly derive from intervening judicial determinations rather than from the original proceedings in which those findings first appeared.**

Where findings originating in one proceeding have been incorporated, adopted, reaffirmed, or otherwise reutilized across successive proceedings, questions may arise concerning the extent to which the resulting record transparently reflects the procedural origins of those findings.

As discussed in Petitioner's prior Notice (**No. 26-563, Dkt. No. 44.1 (2d Cir.)**), portions of the underlying adjudicative sequence had already become the subject of a fully briefed appeal before subsequent proceedings continued to rely upon later enforcement-related findings. Questions may further arise concerning the extent to which later proceedings reflect the relationship between:

(a) the original findings;

(b) appellate challenges directed to portions of the underlying adjudicative sequence;

(c) interruption of appellate review; and

(d) later proceedings in which related findings and litigation history were subsequently incorporated, adopted, reaffirmed, or reutilized.

-------------------------------------------------------------------------------------

## IX. Conclusion

Petitioner respectfully submits that the publicly available record appears to reflect a sequence in which findings originating in earlier proceedings

**PUBLIC VERSION**

were progressively incorporated, adopted, reaffirmed, or otherwise reutilized within later factual and procedural frameworks.

The observations identified herein should be read together with Petitioner's prior Notice concerning unresolved appellate review and cross-proceeding record continuity, previously submitted in **No. 26-563, Dkt. No. 44.1 (2d Cir.)**. The prior Notice focused upon the continued appearance of the underlying judgment across successive proceedings following interruption of appellate review. The present Notice focuses upon the subsequent appearance, incorporation, adoption, reaffirmation, and reutilization of findings reflected in proceedings operating upon that judgment.

The record reviewed by Petitioner appears to identify a traceable sequence through which findings reflected in earlier proceedings subsequently appeared in later litigation positions, were incorporated into later judicial determinations, and thereafter continued to appear through intervening judicial rulings and related proceedings. The significance of that observation relates not to the correctness of any particular finding, but to continuity, traceability, reviewability, and cross-proceeding record formation.

This Notice is submitted solely to identify those relationships as reflected in the presently reviewed record and to preserve awareness of the resulting continuity, traceability, reviewability, and cross-proceeding record-formation considerations.

No substantive relief is requested.

--------------------------------------------------------------------------------

**PUBLIC VERSION**

Respectfully submitted,

DX

Petitioner, Pro Se

Dated: June 25, 2026