PUBLIC VERSION

--------------------------------------------------------------------------------

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
In re: DX, Petitioner
No. 26-563
(Arising from United States v. Ho Wan Kwok, No. 1:23-cr-00118 (AT)
(S.D.N.Y.))

--------------------------------------------------------------------------------

# THIRD NOTICE REGARDING THE FREEZING AND NON-COMPLETION OF APPELLATE REVIEW AND THE CROSS-FORUM ADOPTION OF UNREVIEWED STATE-COURT FINDINGS

Submitted Solely for Informational and Record-Preservation Purposes

--------------------------------------------------------------------------------

Table of Related Proceedings and Recurring References....................................................2

I. Limited Purpose of This Notice........................................................................3

II. The Precise Mechanism and Timeline of the Appellate Freeze....................................7

III. The One Appeal That Was Completed, Contrasted With the Two That Were Not....10

IV. The Unreviewed Foundation ........................................................................12

V. Adoption Without Review in the Bankruptcy Forum..................................................13

   A. The Main Case: Findings Not Given Preclusive Effect...........................................14

   B. The Property Line: The One Instance of Direct Adoption.....................................14

   C. Reliance on the Unreviewed Finding for a Threshold Determination ....................16

   D. Conflicting Characterizations of the Appeal Within a Single Forum......................17

   E. The Absence of Any Reviewing Mechanism.........................................................17

VI. The Unreviewed Findings Reach the Criminal Jury....................................................19

VII. The Systematic Absence of the Appeal-Pending Status .........................................21

VIII. Honest Presentation of the Contrary Record........................................................23

IX. Continuity, Traceability, and Reviewability Considerations.....................................25

X. Conclusion ......................................................................................................27

PUBLIC VERSION

# Table of Related Proceedings and Recurring References

*Provided solely as a reading aid; it maps the citation forms and recurring determinations used in this Notice.*

## A. Proceedings

| Forum | Case / Index No. | Cited herein as |
|---|---|---|
| U.S. Court of Appeals, Second Circuit (this Court) | *In re: DX*, No. 26-563 | — |
| U.S. District Court, S.D.N.Y. (criminal) | *United States v. Guo* (Ho Wan Kwok, a/k/a Miles Guo), No. 23-cr-118 (AT) | "Dkt. No. [no.]" |
| U.S. Bankruptcy Court, D. Conn. (main case) | *In re Ho Wan Kwok*, No. 22-50073 (JAM) | "ECF No. [no.]" |
| — adversary proceeding (the Lady May) | Adv. Pro. No. 22-05003 | "Adv. No. 22-05003, ECF No. [no.]" |
| — adversary proceeding (the § 105(a) injunction) | Adv. Pro. No. 22-05032 | "Adv. No. 22-05032, ECF No. [no.]" |
| N.Y. Supreme Court, N.Y. County (trial) | *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan*, Index No. 652077/2017 | "NYSCEF No. [no.] (Sup. Ct.)" |
| N.Y. Appellate Division, First Department (appeals) | Case Nos. 2021-00740; 2021-01010; 2022-00609; 2022-00610 | "Case No. [____], NYSCEF No. [no.] (1st Dep't)" |

## B. Recurring Determinations

| Determination | State-court origin | Appeal | Amount |
|---|---|---|---|
| Liability SJ (Sept. 15, 2020) | NYSCEF No. 549 (Sup. Ct.) | within Case No. 2021-00740 | authenticity estoppel (described as "~$114 million" at trial) |
| PAX Judgment (Feb. 3, 2021) | NYSCEF No. 716 (Sup. Ct.) | Case No. 2021-00740 (**frozen**) | $116,402,019.57 |
| Conditional Contempt Order (Mar. 16, 2021) | NYSCEF No. 728 (Sup. Ct.) | Case No. 2021-01010 (**affirmed** Nov. 4, 2021) | $500,000/day |

**PUBLIC VERSION**

| Final Contempt Decision (Feb. 9, 2022) | NYSCEF Nos. 1181–1183 (Sup. Ct.) | Case Nos. 2022-00609 / 2022-00610 (**frozen**) | $134,000,000.00 |
|---|---|---|---|
| the ~$254 million claim | PAX's largest unsecured bankruptcy claim (≈ PAX Judgment + Final Contempt Decision) | — | ~$254,000,000 |

*Downstream adoptions:* the **Lady May SJ** (Adv. No. 22-05003, ECF No. 177); the **Injunction Decision** (Adv. No. 22-05032, ECF No. 128, also filed at Dkt. No. 7-3); and **Government Exhibit 1413** (the Final Contempt Decision, read to the jury at Dkt. No. 437).

--------------------------------------------------------------------------------

## I. Limited Purpose of This Notice

Petitioner respectfully submits this Notice solely for informational and record-preservation purposes.

Petitioner does not seek review of any state-court ruling, criminal conviction, sentence, bankruptcy determination, trustee action, or detention ruling. Petitioner does not request reconsideration of any judgment, adjudication of any factual dispute, resolution of any authenticity-related, liability, damages, forfeiture, or sentencing issue, or any form of substantive relief.

This Notice is submitted as a continuation of, and factual supplement to, Petitioner's two prior Notices: the NOTICE REGARDING UNRESOLVED APPELLATE REVIEW AND CROSS-PROCEEDING RECORD CONTINUITY (No. 26-563, Dkt. No. 44.1, 2d Cir.) and the NOTICE REGARDING PROGRESSIVE INCORPORATION, ADOPTION,

**PUBLIC VERSION**

REAFFIRMATION, AND REUTILIZATION OF PRIOR JUDICIAL FINDINGS (No. 26-563, Dkt. No. 45.1 at 10–25, 2d Cir.).

The prior Notices identified, at a general level, that appellate review of the February 3, 2021 judgment (Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan, Index No. 652077/2017, NYSCEF No. 716, N.Y. Sup. Ct.) had been "interrupted" following commencement of the Chapter 11 case, and that the resulting judgment and related findings thereafter appeared and were incorporated across successive proceedings through the sentencing stage.

The present Notice supplements the presently available record in three respects that the prior Notices addressed only generally or not at all:

(1) the precise mechanism and timeline through which appellate review was frozen — including that the freeze was preceded by a state appellate court's denial of a stay and that it affected not only the February 3, 2021 judgment but also a separately filed appeal from the February 9, 2022 final contempt decision (Index No. 652077/2017, NYSCEF Nos. 1181–1183, N.Y. Sup. Ct.);

(2) the manner in which the unreviewed state-court findings were expressly adopted within the bankruptcy forum without independent review — including a single adversary determination in which the bankruptcy court expressly held that the pendency and stay of the appeal did not preclude giving those findings preclusive effect; and

(3) the appearance of those unreviewed findings at the trial and jury stage of the criminal proceedings — a procedural stage not addressed in the prior

PUBLIC VERSION

Notices, whose downstream tracing concluded at the sentencing memorandum (Dkt. No. 833).

The concern identified remains structural rather than substantive. It concerns continuity, traceability, and reviewability of the resulting record, not the correctness of any determination issued by any tribunal.

**The centrality of the bankruptcy proceedings to this Notice.** The appellate record now before this Court incorporates the District Court's Final Judgment. As the following Parts document, the state-court determinations whose appellate review was frozen entered the federal criminal record through two routes: directly — in the detention submissions and determinations traced in Petitioner's prior Notice (No. 26-563, Dkt. No. 45.1 at 10–25, 2d Cir.) and in the trial exhibit addressed in Part VI.A — and through the intervening bankruptcy proceedings, in which the determinations were adopted without independent review and from which they were carried forward: as the sole basis of an adversary summary judgment whose determination was recited to the jury (Parts V.B, VI.C); and as support for a threshold element of an injunction decision submitted in the detention proceedings (Part V.C). The bankruptcy proceedings are thus a principal intermediary through which the frozen and unreviewed determinations were carried into the record now before this Court — and the forum in which the significance of the frozen appeals was expressly considered and set aside (Part V.B). That is why this Notice, though directed to the reviewability of the appellate record, necessarily traces the bankruptcy proceedings in some detail. Petitioner identifies this relationship solely for continuity and traceability; the identification of an intermediary does not, standing alone,

PUBLIC VERSION

establish that any determination was incorrect or that appellate review is precluded.

**Illustration: The Path Appellate Review Was to Take, Contrasted With the Path the Determinations Actually Took.** The following demonstrative summarizes the procedural relationships described in Parts II through VII. It is offered solely as a visual aid to the record and not as evidence of any fact.

| The path appellate review was to take *(never completed)* | The path the determinations actually took *(carried forward without completed review)* |
|---|---|
| Entry of the February 3, 2021 judgment (NYSCEF No. 716) and the February 9, 2022 final contempt decision (NYSCEF Nos. 1181–1183) — amounts generally consistent with the approximately $254 million later listed as the largest unsecured claim | The same two determinations |
| Appeals taken to the Appellate Division, First Department: one perfected, fully briefed, and awaiting decision (Case No. 2021-00740); the other noticed, with its stay application denied on February 15, 2022 (Case No. 2022-00609) | Adopted in an adversary determination in the bankruptcy forum without independent review — given dispositive preclusive effect "even though the time to appeal it was stayed by the filing of the . . . Chapter 11 petition" (Adv. Pro. No. 22-05003, ECF No. 177 at 25) |
| **February 15, 2022 — the automatic stay under 11 U.S.C. § 362(a) takes effect (Case No. 22-50073, ECF No. 1); appellate review is FROZEN** | Incorporated into the detention determination and its affirmance (Dkt. Nos. 51, 87), and the renewed detention denial (Dkt. No. 216) |
| *No merits decision issued. No completed appellate review.* | Presented to the trial jury — directly (Government Exhibit 1413; Dkt. No. 437) and through an intervening bankruptcy ruling that had itself adopted the determination (Dkt. No. 439 at 92) |
| *(the intended path ends here)* | Incorporated into sentencing (Dkt. No. 833), and now part of the appellate record presently before this Court |

*The two columns share a common origin — the same two determinations — and diverge at the automatic stay: the left column reflects the appellate review that was frozen and never completed; the right column reflects the*

PUBLIC VERSION

*continued adoption of those same determinations across successive proceedings, culminating in the record now before this Court.*

---------------------------------------------------------------------------------------

## II. The Precise Mechanism and Timeline of the Appellate Freeze

Petitioner's prior Notice described the interruption of appellate review in general terms. The presently available record permits a more precise account.

**A. The February 3, 2021 judgment appeal was frozen fully briefed and awaiting decision.**

The appeal from the February 3, 2021 judgment (NYSCEF No. 716) was perfected before the Appellate Division, First Department (Case No. 2021-00740). The record reflects that briefing was complete — Appellant's Brief, Respondent's Brief, and Reply Brief having been filed (Appellate Division, First Department, Case No. 2021-00740, NYSCEF Nos. 12, 14, 16) — and that the parties had requested oral argument and were coordinating a hearing date (see id., NYSCEF Nos. 15, 17). No argument was held and no decision issued.

The last substantive document in that appellate record is a letter from appellate counsel to the Clerk, dated March 25, 2022, confirming that the appeal "remains automatically stayed under 11 U.S.C. § 362(a)." (Appellate Division, First Department, Case No. 2021-00740, NYSCEF No. 20.) The commencement of the Chapter 11 case had previously been reported to that court by a Suggestion of Bankruptcy dated February 16, 2022. (Case No. 2021-00740, NYSCEF No. 18.)

PUBLIC VERSION

The appellate record therefore reflects, in appellant counsel's own words entered on the docket, a fully briefed appeal that was stayed rather than decided.

**B. The February 9, 2022 final contempt decision was appealed, and that appeal was frozen within days.**

The prior Notice (Dkt. No. 45.1 at 10–25) treated the February 9, 2022 Decision and Order and related contempt orders (NYSCEF Nos. 1181–1183) as a fixed and established set of findings, tracing only how they were later incorporated. The presently available record reflects that those findings were themselves the subject of a separately filed appeal, and that the appeal was frozen almost immediately.

The record reflects the following sequence:

- **February 9, 2022** — The state court entered the final contempt decision and related orders (Index No. 652077/2017, NYSCEF Nos. 1181–1183, N.Y. Sup. Ct.), including a contempt-related payment obligation of $134,000,000.00 payable within five business days.

- **February 10, 2022** — Notices of appeal were filed from the final contempt decision and the final contempt order. (Appellate Division, First Department, Case No. 2022-00609 (appeal from NYSCEF No. 1181); Case No. 2022-00610 (appeal from NYSCEF No. 1182).)

- **February 14, 2022** — An emergency motion for a stay pending appeal under CPLR 5519(c) was filed, seeking a stay "prior to February 16, 2022, by which date he has been ordered to pay a $134,000,000 contempt fine," and stating that "the motion court has invoked the prospect of imprisonment if it is not paid within five business days, i.e. by February

PUBLIC VERSION

16, 2022." (Appellate Division, First Department, Case No. 2022-00609, NYSCEF Nos. 3, 5.)

- **February 15, 2022** — The application for a stay was denied: "Appellant's application for a stay is denied." (Case No. 2022-00609, NYSCEF No. 5 (entered February 15, 2022).)

- **February 15, 2022, 8:26 p.m.** — A voluntary Chapter 11 petition was filed in the United States Bankruptcy Court for the District of Connecticut. (Case No. 22-50073, ECF No. 1.)

- **February 2022** — The final document entered in the appellate contempt record was a Suggestion of Bankruptcy; no merits proceedings followed. (Case No. 2022-00609, NYSCEF No. 6.)

The record further reflects that the formal stay motion had been calendared for briefing on later dates — opposition due February 22 and reply due February 28, 2022 (Case No. 2022-00609, NYSCEF No. 5) — and was never adjudicated, and that the appeal was never decided on the merits.

**C. The automatic stay was the only stay obtained before the payment deadline, after the state appellate court had declined to grant one.**

In opposing interim relief, the judgment creditor urged that a stay be denied "unless Kwok posts a bond in the amount of $134 million pursuant to CPLR § 5519(a)(2)," and stated that "[i]n the event Kwok posts such a bond, PAX would consent to his request for an interim stay and a stay pending appeal." (Case No. 2022-00609, NYSCEF No. 4 at 1, 3.) The chronology reflects that the state appellate court declined to grant a stay on February 15, 2022, and that the automatic stay of 11 U.S.C. § 362(a) became operative that same evening (at 8:26 p.m.) upon the filing of the Chapter 11 petition — the only

**PUBLIC VERSION**

stay obtained before the February 16, 2022 payment date identified in the stay application.

Petitioner identifies this sequence solely as it appears in the record. The point for present purposes is narrow: the interruption of appellate review described generally in the prior Notice was, as the record reflects, the product of a specific and datable sequence, and it left two separate appeals — from the $116,402,019.57 judgment (NYSCEF No. 716) and from the $134,000,000.00 final contempt decision (NYSCEF Nos. 1181–1183) — pending and undecided.

---------------------------------------------------------------------------------------

## III. The One Appeal That Was Completed, Contrasted With the Two That Were Not

The presently available record reflects that, of the appellate proceedings arising from the judgment and the contempt orders described above, only one advanced to a completed appellate disposition — and it was not either of the appeals whose findings were later carried forward.

The appeal from the earlier **conditional** civil contempt order (Index No. 652077/2017, NYSCEF No. 728, N.Y. Sup. Ct.; Appellate Division, First Department, Case No. 2021-01010) proceeded to completion. On November 4, 2021, the Appellate Division unanimously affirmed, with costs, and instructed the motion court to proceed with an evidentiary hearing to resolve a dispute as to ownership and control of the yacht and to assess appropriate penalties. (Case No. 2021-01010, NYSCEF No. 17 (Appeal No. 14555).) A motion for leave to appeal to the Court of Appeals was thereafter denied on January 20, 2022. (Case No. 2021-01010, NYSCEF No. 22.)

PUBLIC VERSION

By contrast, the appeal from the **February 3, 2021 judgment** ($116,402,019.57; NYSCEF No. 716, Case No. 2021-00740) and the appeal from the **February 9, 2022 final contempt decision** ($134,000,000.00; NYSCEF Nos. 1181–1183, Case No. 2022-00609) — determinations whose combined amount is generally consistent with the approximately $254,000,000 litigation claim later listed as the debtor's largest unsecured claim (Case No. 22-50073, ECF No. 1) — never received merits review.

The contrast is offered solely as a record observation. It reflects that the same appellate court possessed and exercised the capacity to bring a related contempt order to a completed, affirmed disposition, and that this occurred precisely for the order whose subsequent evidentiary hearing produced the February 9, 2022 final contempt decision. The two largest and later most frequently reused determinations, however, were frozen before any comparable merits review occurred.

The record further reflects that, within the state proceedings, the pendency of an appeal had itself been treated as a reason to defer. The contempt proceeding that ultimately produced the February 9, 2022 final contempt decision had earlier been stayed pending the appeal of the conditional contempt order — held in abeyance from approximately July 2021 until after the Appellate Division's November 4, 2021 decision. (Index No. 652077/2017, NYSCEF Nos. 873, 898, 1015, N.Y. Sup. Ct.) The record thus reflects that the state court recognized the pendency of an appeal as a basis to defer its own proceedings — in contrast to the subsequent course, in which the frozen appeals of the judgment (NYSCEF No. 716) and of the final contempt decision (NYSCEF Nos. 1181–1183) were neither honored by deferral in the later proceedings nor themselves resolved.

**PUBLIC VERSION**

This distinction is material to the accuracy of later characterizations of the appellate history, as described in Part VI below.

--------------------------------------------------------------------------------

## IV. The Unreviewed Foundation

The prior Notices anchored their discussion to the February 3, 2021 judgment (NYSCEF No. 716) and the February 9, 2022 contempt findings (NYSCEF Nos. 1181–1183). The presently available record reflects that the foundational determination underlying the judgment — the foreclosure of any challenge to the authenticity of the operative transaction documents by judicial estoppel — was itself never the subject of a merits authenticity determination.

The September 15, 2020 Decision and Order granting partial summary judgment held that the defendant was judicially estopped from challenging the authenticity of the operative transaction documents, and expressly reflected that the documents were "accepted as authentic for the purpose of evaluating" the partial summary judgment motion and that "a final determination cannot be a prerequisite for judicial estoppel." (Index No. 652077/2017, NYSCEF No. 549 at 2–5, N.Y. Sup. Ct.) The estoppel determination originated in an earlier order, entered July 7, 2020 on a motion for sanctions. (Index No. 652077/2017, NYSCEF No. 404, N.Y. Sup. Ct.) That determination was itself the subject of a motion for reargument under CPLR 2221(d) (NYSCEF No. 494), which was denied (NYSCEF No. 549 at 8, N.Y. Sup. Ct.).

**PUBLIC VERSION**

The record therefore reflects that the authenticity of the operative documents was resolved as a matter of judicial estoppel rather than by a merits determination, and that this estoppel — challenged on the frozen appeal (Case No. 2021-00740, NYSCEF No. 12) — was never itself subjected to completed appellate review.

The record further reflects that the same authenticity contention reappeared in the bankruptcy forum, where it was again not reached on the merits. The defendant asserted, in writing and at hearing, that the operative personal guarantee was a forgery. (Case No. 22-50073, ECF No. 83 at ¶ 12.) The bankruptcy court did not undertake a merits authenticity determination, observing instead — after the judgment creditor's counsel confirmed that the underlying summary-judgment determination "is on appeal" and "not an issue I think this Court could review" — that "I understand that he made these findings and that's still on appeal at the moment." (Case No. 22-50073, ECF No. 111 (Mar. 1, 2022 Hr'g Tr.) at 28–29.)

Accordingly, the record reflects a contention that was precluded rather than adjudicated in the state court, that was identified as still pending on appeal in the bankruptcy court, and that has not, on the presently available record, received a merits determination in any forum.

------------------------------------------------------------------------------------------

## V. Adoption Without Review in the Bankruptcy Forum

The prior Notice (Dkt. No. 45.1 at 10–25) traced the incorporation of the contempt findings on the criminal-detention side. The presently available record reflects a parallel and, in one instance, more direct pattern within the

PUBLIC VERSION

bankruptcy forum itself. Petitioner respectfully draws the following distinctions, which the prior Notices did not.

## A. The Main Case: Findings Not Given Preclusive Effect

In the main bankruptcy case, the record reflects that the bankruptcy court did **not** treat the state-court findings as carrying preclusive effect. At a hearing, the court stated: "I'm not saying they have collateral estoppel effect." (Case No. 22-50073, ECF No. 610 at 96.) The court elsewhere characterized the state-court content as "allegations that continue to be made here by the parties." (Case No. 22-50073, ECF No. 610 at 108.)

Petitioner identifies this feature of the record affirmatively. To the extent later filings reflect adoption of state-court findings within the bankruptcy forum, that adoption did not extend to the governance and contempt determinations in the main case, which the record reflects were supported on independent bankruptcy-law grounds.

## B. The Property Line: The One Instance of Direct Adoption

The record reflects a single adversary determination in which the state-court findings were directly adopted as the dispositive basis for a merits ruling, without independent re-examination.

In the adversary proceeding concerning the vessel (the "Lady May Adversary Proceeding"; United States Bankruptcy Court for the District of Connecticut, Adversary Proceeding No. 22-05003), the court granted partial summary judgment on the trustee's first counterclaim on the sole basis of collateral estoppel, treating the state-court determination of beneficial ownership and control as an established, non-relitigable fact. (Adv. Pro. No.

Page **14** of **28**

PUBLIC VERSION

22-05003, ECF No. 177 (supplemental memorandum of decision), at 18, 20, 31.)

In doing so, the court addressed directly the significance of the frozen appeal. The court accepted the trustee's contention that "a judgment is final under New York law despite the pendency of an appeal or remaining time to appeal." (Adv. Pro. No. 22-05003, ECF No. 177 at 24.) The court then held:

> "The Final Contempt Decision may be accorded preclusive effect even though the time to appeal it was stayed by the filing of the Individual Debtor's Chapter 11 petition."

(Adv. Pro. No. 22-05003, ECF No. 177 at 25.)

The court further concluded that there was "no due process concern in this case because an appeal could have been taken," and on that basis rejected the argument that the affected parties had lacked a full and fair opportunity to litigate the issue. (Adv. Pro. No. 22-05003, ECF No. 177 at 30.)

Petitioner identifies this determination solely as a record fact and takes no position on the correctness of the governing rule it applied, which the court supported with citation to established authority. Petitioner respectfully observes only the following record relationship: the reasoning that "an appeal could have been taken" addresses the abstract availability of an appeal, whereas the presently available record reflects that the appeal from the final contempt decision had in fact been filed, had had its stay application denied, had been frozen by operation of the automatic stay, and — as reflected below — was thereafter neither restored nor decided. Petitioner identifies this relationship for record-continuity purposes only.

PUBLIC VERSION

This adversary determination is the record point at which the significance of the unreviewed and frozen appeal becomes most concrete: a federal court expressly considered, and expressly set aside, the pendency and stay of the appeal as an obstacle to giving the underlying findings dispositive preclusive effect.

## C. Reliance on the Unreviewed Finding for a Threshold Determination

The record reflects a further instance in which a federal determination rested, in part, upon the unreviewed state-court finding. In a memorandum of decision entering a preliminary injunction under 11 U.S.C. § 105(a), the bankruptcy court addressed the first required element of that relief — a reasonable likelihood of a successful reorganization — and, in support, stated that "other courts that have entered a judgment against the Debtor have held that the Debtor hides assets," citing the February 9, 2022 contempt decision (Index No. 652077/2017, NYSCEF No. 1181, N.Y. Sup. Ct.). (the "Injunction Adversary Proceeding," Adversary Proceeding No. 22-05032, ECF No. 128, at 38; submitted in the criminal proceeding as United States v. Guo, No. 23-cr-118 (AT), Dkt. No. 7-3, at 39 (S.D.N.Y.).) The findings as to the enjoined conduct rested on an extensive independent record — the testimony of nine witnesses and 100 exhibits (Adv. No. 22-05032, ECF No. 128 at 6) — but the "hides assets" premise supporting that threshold element was drawn from the state-court finding whose appeal, as set forth in Parts II and III, had been frozen and never reviewed, and the decision does not appear to address that finding's pending or frozen status. The decision further reflected that recovery of certain contested assets — including the vessel — remained "subject to the outcome of" then-pending adversary proceedings (Adv. No. 22-05032, ECF No. 128 at 37), one of which

PUBLIC VERSION

(Adversary Proceeding No. 22-05003) was the same proceeding thereafter resolved solely on collateral estoppel derived from the frozen state-court finding (Part V.B). That determination was itself carried forward into the detention proceedings (Dkt. No. 7-3), forming part of the intermediation identified in Part I.

Petitioner identifies this as a record fact bearing on continuity and traceability, and not as a contention that the injunction was wrongly entered.

## D. Conflicting Characterizations of the Appeal Within a Single Forum

Within the bankruptcy forum, the existence and status of the appeal were characterized inconsistently. The United States Trustee's filing stated that "[a]n appeal is pending and undecided as of the chapter 11 filing. No stay was imposed." (Case No. 22-50073, ECF No. 49 at 5.) Counsel for the judgment creditor likewise stated at a hearing that "the central issues were already on appeal." (Case No. 22-50073, ECF No. 580 at 25.) At that same hearing, however, the court stated "[t]here hasn't been an appeal." (Case No. 22-50073, ECF No. 580 at 93.)

Petitioner identifies these statements solely as they appear in the record. They reflect that, at a formative procedural stage, the existence and status of the pending appeal were the subject of differing characterizations on a single record.

## E. The Absence of Any Reviewing Mechanism

No mechanism operated to restore or complete the frozen appeals within the bankruptcy proceedings, and the judgment creditor's own submissions reflected a posture that left them beside the point. In its reply supporting a motion concerning the automatic stay, the creditor urged the bankruptcy

**PUBLIC VERSION**

court to treat the state-court finding of ownership and control as binding under the Rooker-Feldman doctrine and res judicata — asserting that preclusion applied "notwithstanding the February 9 Contempt Order remains on appeal" — and quoted authority that "the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding." (Case No. 22-50073, ECF No. 98 at 6–8 & nn.13–14.) In the same submission, the creditor stated that "Kwok's only vehicle to challenge the NY State Court's findings regarding the Lady May is to proceed with his appeal of the February 9 Contempt Order" (id. at 8) — an appeal that, as set forth in Part II, had been stayed by operation of § 362 and was never adjudicated.

The official committee of unsecured creditors likewise recognized, early in the case, that the appeal "can easily go forward . . . once relief from the automatic stay is granted." (Case No. 22-50073, ECF No. 346 at 20 n.9.) The record does not reflect that any party thereafter sought relief from the stay to resume the appeal; and the trustee's own pleading reflected, in footnotes, that the appeals remained pending while asserting that the underlying finding was "preclusive in effect." (Case No. 22-50073, ECF No. 876 (Answer and Counterclaims), at 29, 40, 58.)

The record further reflects no merits allowance determination concerning the approximately $254 million claim described in Part III; it does not reflect an objection by the trustee to that claim (see ECF No. 1842 (objecting to other claims)); and the debtor was barred from objecting to claims without leave: "The Debtor may not file any future objections to Proofs of Claim in these bankruptcy cases without seeking and obtaining the permission of this Court

**PUBLIC VERSION**

to do so." (Case No. 22-50073, ECF No. 1399 at 5.) Accordingly, within the bankruptcy forum, the frozen appeals were neither restored nor decided, and the underlying claim was neither independently adjudicated nor objected to — the party who had challenged it being barred from objecting without leave of court.

---------------------------------------------------------------------------------------------

## VI. The Unreviewed Findings Reach the Criminal Jury

Petitioner's prior Notices traced the incorporation of the state-court findings through the criminal-detention determinations and the sentencing memorandum (Dkt. No. 833). The presently available record reflects a further procedural stage not addressed in the prior Notices: the appearance of the unreviewed findings in the evidence presented to the trial jury.

**A. Direct presentation of the final contempt decision to the jury.**

At trial, the February 9, 2022 final contempt decision was admitted as a government exhibit (Government Exhibit 1413) and read to the jury, including the determination that the defendant held a "beneficial interest in and control over" the vessel and the direction to "tender immediate payment to PAX in the amount of $134 million." (Trial Tr., United States v. Guo, No. 23-cr-118 (AT), Dkt. No. 437, at 167–170 (S.D.N.Y.).) The same testimony also presented the underlying state-court civil judgment, described as "roughly $114 million," and the September 15, 2020 grant of summary judgment on liability. (Dkt. No. 437, at 162, 164.)

**B. Characterization of the appellate history.**

PUBLIC VERSION

In the course of that presentation, the testimony recited that "on November 4, 2021, the Appellate Division's First Department affirmed this court's order holding Kwok in conditional civil contempt." (Dkt. No. 437, at 168.) As reflected in Part III above, the affirmance of November 4, 2021 concerned the earlier **conditional** contempt order (NYSCEF No. 728; Case No. 2021-01010) — not the **final** $134,000,000.00 contempt decision then before the jury (NYSCEF Nos. 1181–1183), whose separate appeal (Case No. 2022-00609) had been frozen and never decided. Petitioner identifies this solely as a record observation concerning the accuracy of the appellate history as presented. The bankruptcy stay was referenced in that testimony only in explaining that collection efforts and the state case were stayed (Dkt. No. 437, at 166, 183), not to indicate that the underlying determination remained unreviewed.

## C. Presentation through an intervening bankruptcy determination.

The record further reflects that the findings reached the jury through an intervening bankruptcy determination as well. A government witness testified: "The judge made a finding that HK USA was an alterego of the debtor . . . the Lady May was property of Mr. Kwok's bankruptcy estate and the funds in escrow were property of Mr. Kwok's bankruptcy estate." (Dkt. No. 439, at 92.) The determination that the vessel was property of the estate was entered in the adversary proceeding described in Part V.B above, in which summary judgment rested solely on collateral estoppel derived from the state-court contempt decision. (Adv. Pro. No. 22-05003, ECF No. 177 at 25, 31.) The record therefore reflects that the same underlying state-court determination reached the jury both directly, through the contempt exhibit,

PUBLIC VERSION

and indirectly, through a bankruptcy ruling that had itself adopted that determination without independent review.

**D. The evidentiary ruling admitting the determinations.**

The record reflects that the underlying determinations were admitted following a contested evidentiary ruling. The district court denied the defense motion to exclude the contempt order and granted the government's motion to admit, reasoning that a court may admit court rulings "for the fact that they were rendered," accompanied by a limiting instruction. (Dkt. No. 311 at 1, 5.) The presently available record further reflects that the opposition to admission was directed principally to prejudice under Rule 403, and does not appear to reflect an argument that the determinations were non-final or that their appellate review had been frozen. (Dkt. No. 271 at 34; Dkt. No. 287 at 34.)

Petitioner identifies these features of the record solely to complete the tracing begun in the prior Notices. The point for present purposes is narrow: the determinations whose appellate review had been frozen appeared, on the presently available record, in the evidence presented to the jury that returned the verdict, and the frozen and unreviewed status of those determinations does not appear to have been presented at that stage.

--------------------------------------------------------------------------------

## VII. The Systematic Absence of the Appeal-Pending Status

Across the successive proceedings identified in the prior Notices and herein, the presently available record reflects that the frozen and unreviewed status of the underlying determinations was consistently absent from the characterizations of those determinations.

**PUBLIC VERSION**

In the criminal filings, the determinations were repeatedly presented as established. The government's submissions recited the contempt determination and the associated characterizations — including the description of assets secreted "in a maze of corporate entities and with family members" — in support of its positions. (Dkt. No. 833 at 25, quoting NYSCEF No. 1181; see also Dkt. No. 273 at 34–35.)

The only reference to the appellate history that Petitioner has identified in the trial testimony presenting these determinations, as noted in Part VI.B, was the statement that the First Department had "affirmed" — a statement that, as reflected in Part III, described the earlier conditional contempt order rather than the frozen appeal from the final contempt decision.

This absence was not confined to the government's presentation. When the final contempt decision was admitted at trial, the defense stated only that, "[s]ubject to our prior objection," it had "no objection at this time" (Dkt. No. 437 at 167) — the prior objection having been directed to prejudice under Rule 403 rather than to the finality or appellate status of the determination (Dkt. Nos. 271 at 34; 287 at 34). The point remained unraised through sentencing: the defendant's sentencing submission stated only that he "denies that he hid assets and . . . disputes the findings of the Court in the PAX litigation and related findings in the Bankruptcy Court" (Dkt. No. 822 at 94), without reference to the frozen or unreviewed status of those findings. Across successive stages and successive counsel, the presently available record does not appear to reflect that the frozen and unreviewed status of the determinations was placed before the court.

The record further reflects that the defendant subsequently contested the effectiveness of his trial counsel: in a substitution-of-counsel proceeding that

**PUBLIC VERSION**

the court granted, the defendant stated, under oath, that there was "no trust at all" as "a result of the ineffective representation by [his] counsel," and that he did not believe his attorneys had "reviewed [his] case materials" (Dkt. No. 700-1 at 5–6); new counsel was thereafter appointed under the Criminal Justice Act (No. 23-cr-118, Minute Entry (Apr. 8, 2025)). Petitioner identifies these events solely as they appear in the public record. Petitioner asserts no claim of ineffective assistance of counsel in this Notice — which requests no substantive relief — and reserves any such claim for the appropriate forum.

Petitioner identifies this pattern solely as a record observation. The concern is not that later proceedings referenced the underlying determinations, nor that they were prohibited from doing so. The concern is that the presently available record does not appear to reflect, at these later stages, the frozen and unreviewed status of the determinations being referenced.

---------------------------------------------------------------------------------

## VIII. Honest Presentation of the Contrary Record

Consistent with the limited and informational purpose of this Notice, Petitioner identifies the following features of the record that bear on, and in several respects cut against, the observations above. Petitioner presents them so that the record is described completely.

(1) As set forth in Part V.A, the bankruptcy court expressly declined to give the state-court findings preclusive effect in the main case, characterizing them as "allegations." (Case No. 22-50073, ECF No. 610 at 96, 108.) The instance of direct adoption identified in Part V.B is confined to the vessel-related adversary proceeding.

**PUBLIC VERSION**

(2)  Several of the record features described above reflect party consent. The order appointing the trustee reflects that "cause" was stipulated. (Case No. 22-50073, ECF No. 465 at 12.) A partial resolution order reflects an agreement that the defendant "will not appeal such findings." (Case No. 22-50073, ECF No. 1110 at 2.) The disposition of certain stay-related appeals appears, from the docket entries, to reflect consent and joint status reporting.

(3)  The preclusion rule applied in the adversary determination (Part V.B) — that a New York judgment is final for preclusion purposes notwithstanding a pending appeal or remaining time to appeal — is an established rule that the court supported with citation to authority, and is not identified here as an error of law. Petitioner's observation is confined to the record relationship between the abstract availability of an appeal and the frozen status of the appeal that was in fact filed.

(4)  The admission of the prior determinations at trial was accompanied by a limiting instruction, and the district court's ruling reflects that court rulings may be admitted "for the fact that they were rendered" rather than for their truth. (Dkt. No. 311 at 5.)

(5)  The record reflects that certain later determinations — including the quantum of criminal forfeiture — rest on independent grounds and do not appear to depend on the state-court determinations.

(6)  The defendant did not adopt the state-court determinations; the record reflects that he disputed them, including in his sentencing submission. (See Dkt. No. 822, at 94 (objecting to PSR ¶ 84).)

(7)  The record reflects that the defense itself referred to the state-court determination as a "final contempt order" (Dkt. Nos. 287 at 34; 439 at 37),

**PUBLIC VERSION**

and did not rebut the trial testimony reciting that the First Department had "affirmed" the earlier conditional contempt order (Dkt. No. 437 at 168). Petitioner identifies the absence of any appellate-status objection as a neutral feature of the record, and not as a contention that any party was obligated to raise it.

Petitioner identifies these features so that the observations in this Notice are understood in their complete record context, and not as assertions that any determination was incorrect or that any tribunal exceeded its authority.

-------------------------------------------------------------------------------------

## IX. Continuity, Traceability, and Reviewability Considerations

The presently available record, taken together with the prior Notices, appears to reflect the following sequence:

(1) the authenticity of the operative transaction documents was resolved by judicial estoppel rather than by a merits determination, and that estoppel was challenged on appeal (NYSCEF No. 549; Case No. 2021-00740, NYSCEF No. 12);

(2) two determinations — the February 3, 2021 judgment (NYSCEF No. 716) and the February 9, 2022 final contempt decision (NYSCEF Nos. 1181–1183) — were separately appealed, and both appeals were frozen, one fully briefed and awaiting decision and the other within four business days of filing, following a state appellate court's denial of a stay and the commencement of the Chapter 11 case (Case Nos. 2021-00740, 2022-00609; Case No. 22-50073, ECF No. 1);

PUBLIC VERSION

(3) of the related appeals, only the earlier conditional contempt appeal reached a completed, affirmed disposition (Case No. 2021-01010);

(4) within the bankruptcy forum, the frozen appeals were neither restored nor decided; the underlying claim was neither independently adjudicated nor subject to objection; and, in one adversary determination, the findings were given dispositive preclusive effect notwithstanding the pendency and stay of the appeal (Adv. Pro. No. 22-05003, ECF No. 177 at 25);

(5) the same determinations thereafter appeared in the evidence presented to the criminal jury, both directly and through the intervening bankruptcy determination (Dkt. Nos. 437, 439); and

(6) across these stages, the frozen and unreviewed status of the determinations does not appear to have been reflected, and the only reference to the appellate history identified in the trial testimony described a different, completed appeal.

The presently available record further reflects that the bankruptcy proceeding itself followed from the same two determinations: the Chapter 11 petition was filed within hours of the state appellate court's denial of a stay of the $134,000,000 contempt and on the eve of the payment date (Case No. 22-50073, ECF No. 1), and the holder of the February 3, 2021 judgment and the February 9, 2022 contempt determination was listed as the largest unsecured creditor (id.). To the extent the determinations entered the criminal record through the bankruptcy proceedings, they did so in the specific instances identified in Parts V.B and V.C, in which the bankruptcy determinations rested upon the state-court findings rather than upon independent re-examination. Petitioner identifies this relationship solely for continuity and traceability, and does not contend that every bankruptcy

PUBLIC VERSION

determination rested on the state-court findings; as set forth in Part V.A, the main-case determinations were supported on independent grounds.

Where determinations whose appellate review was frozen before completion are thereafter adopted, without independent review, as the dispositive basis for later determinations, and ultimately appear in the evidence supporting a criminal verdict, questions may arise concerning the continuity, traceability, and reviewability of the resulting record — including the extent to which that record transparently reflects the frozen and unreviewed status of the determinations on which it rests.

Petitioner respectfully submits that these questions concern the formation, continuity, traceability, and reviewability of the record across successive proceedings rather than the correctness of any determination issued by any tribunal.

--------------------------------------------------------------------------------

## X. Conclusion

This Notice is submitted solely to identify, as reflected in the presently available record, (1) the precise mechanism and timeline through which appellate review of the underlying determinations was frozen; (2) the manner in which those frozen and unreviewed determinations were thereafter adopted, in one instance expressly notwithstanding the pendency and stay of the appeal, within the bankruptcy forum; and (3) the appearance of those determinations in the evidence presented to the criminal jury — a procedural stage not addressed in Petitioner's prior Notices.

**PUBLIC VERSION**

Petitioner identifies these procedural relationships solely for informational, continuity, traceability, and reviewability purposes, and to preserve awareness of the resulting record-formation considerations.

No substantive relief is requested.

--------------------------------------------------------------------------------------

Respectfully submitted,

DX          *DX*

Petitioner, Pro Se

Dated: July 18, 2026

--------------------------------------------------------------------------------

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

In re: DX, Petitioner

No. 26-563

(Arising from United States v. Ho Wan Kwok, No. 1:23-cr-00118 (AT)
(S.D.N.Y.))

--------------------------------------------------------------------------------

# CERTIFICATE OF SERVICE

--------------------------------------------------------------------------------

I, DX, hereby certify under penalty of perjury that on July 18, 2026, I served true and correct copies of the following documents:

(1) Third Notice Regarding The Freezing And Non-Completion Of Appellate Review And The Cross-Forum Adoption Of Unreviewed State-Court Findings.

(2) Certificate of Service.

Service was made upon the following counsel by electronic mail and by registered mail, postage prepaid, with tracking:

**Nathan Rehn**
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
26 Federal Plaza, 37th Floor
New York, NY 10278

Email: nathan.rehn@usdoj.gov

Executed on July 18, 2026.

DX

Petitioner, Pro Se